Norman GILBERT, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 89–53.

United States Court of Veterans Appeals.

Argued July 25, 1990.

Decided Oct. 12, 1990.

As Amended Dec. 18, 1991.

Ronald L. Smith, for appellant.

Andrew J. Mullen, Deputy Asst. Gen. Counsel, with whom Raoul L. Carroll, General Counsel, and Stephen A. Bergquist, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Associate Judges.

FARLEY, Associate Judge, filed the opinion of the Court, in which NEBEKER, Chief Judge, joined.

KRAMER, Associate Judge, filed a concurring opinion.

FARLEY, Associate Judge:

This case presents the Court with its first occasion to consider three statutory provisions of Title 38, United States Code, and their interrelationship. Section 4061(a)(4) provides that the Court may set aside a finding of material fact by the Board of Veterans' Appeals (BVA) only if such finding is "clearly erroneous." Section 3007(b) gives a veteran "the benefit of the doubt" when there is an approximate balance of positive and negative evidence

on a material issue. Section 4004(d)(1) requires that the BVA shall include a written statement of the Board's findings and conclusions, and the "reasons or bases" for those findings and conclusions, in its decisions.

The veteran seeks benefits for a disability which he claims resulted from a back injury sustained when he fell with a machine gun in his arms while serving in Korea in 1956. The BVA upheld the denial of the veteran's claim (*Norman Gilbert*, loc. no. 927766 (BVA Sept. 28, 1989)), finding that he had not demonstrated that any back injury occurred during military service, that even if such an injury did occur it was "apparently acute and transitory in nature and resolved without leaving any residual disability" (*Gilbert* at 7), and that he was not entitled to the "benefit of the doubt". However, the BVA decision includes neither an analysis of the credibility or probative value of the evidence submitted by and on behalf of the veteran in support of his claim nor any explanation for the bare conclusion that "the Board does not find that [the] doctrine [of reasonable doubt] would warrant allowance of the benefit sought on appeal." *Gilbert* at 8. The decision thus fails to comply with the requirement of 38 U.S.C. § 4004(d)(1) (1988) that there be a "written statement of the … reasons or bases for" factual findings and conclusions of law. Accordingly, while we retain jurisdiction, we remand the matter to the Board pursuant to 38 U.S.C. § 4052(a) (1988) for action consistent with this opinion.

### I.

■ The Court has jurisdiction to hear this appeal pursuant to 38 U.S.C. § 4052 (1988). In order to demonstrate entitlement to benefits for a disability claimed to have originated during peacetime active military service, a veteran must show that the disability resulted from either an "injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty". 38 U.S.C. § 331 (1988). (Presumptions created by various statutes and regulations do not apply to the type of injury and disability alleged in this case. *See, e.g.*, 38 U.S.C. §§ 301, 312, 337 (1988); 38 C.F.R. § 3.307, 3.309(a) (1989)).

The Court, like the Secretary of Veterans Affairs, adopts the statement of facts contained in the brief submitted by the veteran. For the purpose of this opinion the relevant facts may be summarized as follows: The veteran first filed a claim for benefits with the Veterans' Administration (VA) [now the Department of Veterans Affairs] in 1971 for disability allegedly resulting from a back injury incurred while he was stationed in Korea in 1956. The St. Petersburg, Florida, Veterans' Administration Regional Office denied the veteran's claim and he did not appeal the decision. Subsequently, the veteran reopened his claim which was again denied. In 1985, this denial was affirmed by the BVA. In 1988, the veteran once again reopened his claim which resulted in the ratings decision of July 12, 1989, denying "service connection for a back condition, legs condition and feet condition." On September 28, 1989, the BVA again affirmed the denial of the veteran's claim due to the absence of any entry in the veteran's medical service records which documented that a back injury was incurred by the veteran while in the service. The Board also concluded that even if the veteran had been injured, the injury was only transitory in nature and did not result in the current disability.

The veteran filed a timely appeal. He asks that we reverse the decision of the Board denying him entitlement to service connection for his current back disability on the ground that the BVA's finding that he did not suffer an injury to his back while in the military service was clearly erroneous. The veteran argues that, because a preponderance of the available evidence is in favor of granting service connection for his current back disability, the Board erred in relying on the absence of clinical documentation in his medical service records.

The Secretary in turn urges the Court to uphold the BVA's decision. The Secretary argues that the BVA's finding of fact that

the veteran had not demonstrated that he suffered a back disability, which was initially reported to the VA many years after discharge, due to an injury incurred during his military service is not clearly erroneous.

## II.

### The "Clearly Erroneous" Standard of Review

Congress has provided that this

> Court ... to the extent necessary to its decision and when presented, shall ... in the case of a finding of material fact made in reaching a decision in a case before the [Department of Veterans Affairs] with respect to benefits under laws administered by the [Department of Veterans Affairs], hold unlawful and set aside such finding if the finding is clearly erroneous.

38 U.S.C. § 4061(a)(4) (1988).

A "[m]aterial fact is one upon which [the] outcome of litigation depends." *Black's Law Dictionary*, 881 (5th ed. 1979). Under § 4061(a)(4), in order for a finding of material fact made by the BVA to be set aside, this Court must conclude that the finding is "clearly erroneous." The Supreme Court has defined the "clearly erroneous" standard as follows: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The Supreme Court provided further explanation of this standard in *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985):

> This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the

findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*" *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 [89 S.Ct. 1562, 1576, 23 L.Ed.2d 129] (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 [70 S.Ct. 177, 179, 94 L.Ed. 150] (1949); *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 [102 S.Ct. 2182, 72 L.Ed.2d 606] (1982).

*Id.* 470 U.S. at 573–74, 105 S.Ct. at 1511; *see also Danville Plywood Corp. v. United States*, 899 F.2d 3 (Fed.Cir.1990).

■ While the Supreme Court's discussion of "clearly erroneous" was within the context of one judicial tribunal reviewing another judicial tribunal, the same principles govern our situation. This Court, a judicial tribunal, reviews the BVA, an administrative tribunal, which functions as a factfinder in a manner similar to that of a trial court, although, for the most part, in a non-adversarial setting. It is clear from the legislative history of the Veterans' Judicial Review Act, 38 U.S.C. §§ 4051–4092 (1988) (hereinafter VJRA), that Congress intended that this Court's application of the "clearly erroneous" standard parallel that of the Article III courts. Rule 52(a) of the Federal Rules of Civil Procedure provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." This is the standard used by United States Courts of Appeals in reviewing findings of material fact made by United States District Courts and the United States Tax Court. During the floor debates on the VJRA, both Senator Cranston, Chairman of the Senate Committee on Veterans' Affairs, and Representative Edwards expressed the

view that the "clearly erroneous" standard of Rule 52(a) was to be used by this Court. 134 Cong.Rec. S16648 (daily ed. Oct. 18, 1988) (statement of Sen. Cranston); 134 Cong.Rec. H10360 (daily ed. Oct. 19, 1988) (statement of Rep. Edwards).

▆ It is *not* the function of this Court to decide whether a veteran was injured or whether any such injury occurred in or was aggravated during military service; rather, it is the function of this Court to decide whether such factual determinations made by the BVA in a particular case constituted clear error. Although this distinction may seem trivial, its significance cannot be overstated. In practical terms, under the "clearly erroneous" rule this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a "plausible" basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them.

## III.

### "The Benefit of the Doubt" Doctrine

▆ A unique standard of proof applies in decisions on claims for veterans benefits. Unlike other claimants and litigants, pursuant to 38 U.S.C. § 3007(b), a veteran is entitled to the "benefit of the doubt" when there is an "approximate balance of positive and negative evidence."

### A.

The term "standard of proof", which refers to the evidentiary threshold which a litigant must achieve in order to prevail, has been the subject of definitive comment by the Supreme Court.

In *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), the Court, by a unanimous vote of the participating Justices, declared: "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Id.*, at 423, 99 S.Ct. at 1808, quoting *In re Winship*, 397 U.S. 358, 370, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). *Addington* teaches that, in any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants.

*Santosky v. Kramer*, 455 U.S. 745, 754–55, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982); *see also Cruzan v. Director, Missouri Department of Health*, — U.S. —, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990).

The various forms of standards of proof cover a wide spectrum. At one end is the requirement that guilt be proven "beyond a reasonable doubt" in a criminal case where

> the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment. [Footnote omitted.] In the administration of criminal justice, our society imposes almost the entire risk of error upon itself.

*Addington v. Texas*, 441 U.S. 418, 423–24, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979).

Moving along the spectrum, the second most stringent standard is "clear and convincing evidence", which applies

> when the individual interests at stake ... are both "particularly important" and "more substantial than mere loss of money." ... the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with "a significant deprivation of liberty" or "stigma."

*Santosky*, 455 U.S. at 756, 102 S.Ct. at 1396.

In civil litigation between private litigants, the "fair preponderance" standard controls. "[W]hile private parties may be

interested intensely in a civil dispute over money damages, application of a 'fair preponderance of the evidence' standard indicates both society's 'minimal concern with the outcome,' and a conclusion that the litigants should 'share the risk of error in roughly equal fashion.'" *Santosky,* 455 U.S. at 755, 102 S.Ct. at 1395.

■ The statutory "benefit of the doubt" standard of proof for cases dealing with veterans benefits is at the farthest end of the spectrum, beyond even the "fair preponderance" standard. Section 3007(b) of Title 38, which was enacted as part of the VJRA, provides:

> When, after consideration of all evidence and material of record in a case before the [Department of Veterans Affairs] with respect to benefits under laws administered by the [Department of Veterans Affairs] there is an *approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant.* Nothing in this subsection shall be construed as shifting from the claimant to the [Secretary] the burden specified in subsection (a) of this section. (Emphasis added).

Therefore, a veteran need only demonstrate that there is an "approximate balance of positive and negative evidence" in order to prevail; entitlement need not be established "beyond a reasonable doubt," by "clear and convincing evidence," or by a "fair preponderance of evidence." In other words, as counsel for the Secretary agreed at oral argument, the preponderance of the evidence must be against the claim for benefits to be denied. In a very real sense, the Secretary faces an easier task than other administrative or judicial factfinders who must render a decision even in the closest of cases; when a veteran seeks benefits and the evidence is in relative equipoise, the law dictates that veteran prevails. This unique standard of proof is in keeping with the high esteem in which our nation holds those who have served in the Armed Services. It is in recognition of our debt to our veterans that society has through legislation taken upon itself the risk of error when, in determining whether a veteran is entitled to benefits, there is an "approximate balance of positive and negative evidence." By tradition and by statute, the benefit of the doubt belongs to the veteran.

### B.

In enacting § 3007(b), Congress codified the longstanding "reasonable doubt" policy of the Veterans' Administration which was contained in 38 C.F.R. § 3.102 (1988):

> It is the defined and consistently applied policy of the Veterans' Administration to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence; the claimant is required to submit evidence sufficient to justify a belief in a fair and impartial mind that the claim is well grounded. Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine. The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

The concept embodied in this regulation originated in the post-Civil War era. After World War I, when rating schedules were first promulgated, the "benefit of the doubt" policy was continued: "The law must be administered by its broadest interpretation and ratings of disability should be made as generous as possible in consistency with the facts. Wherever a question of doubt arises the benefit of such doubt must be given to the claimant." 50 Fed.Reg. 34,454 (1985). In a 1924 opinion, the Veterans Bureau General Counsel "outlined the 'benefit of the doubt' policy and explained it was not to be applied if the truth could be established by a preponderance of the evidence; on the other hand, proof 'beyond a reasonable doubt' was never required." *Id.*

The legislative history of § 3007(b) demonstrates that both the Senate and House Committees on Veterans' Affairs intended to codify the "reasonable doubt" standard, although there were some differences in their respective motivations. Whereas the House Committee intended that "codification of this concept shall in no way alter the current interpretation of the existing VA regulation or concept" (H.R.Rep. No. 963, 100th Cong., 2nd Sess. 38 (1988), U.S.Code Cong. & Admin.News 1988, 5782, 5820), the Senate Committee desired to clarify the "reasonable doubt" regulatory standard which it believed was stated "in equivocal and sometimes internally inconsistent terms." S.Rep. No. 418, 100th Cong., 2nd Sess. 32 (1988). The Senate Committee further stated: "Where the evidence clearly calls for a finding of fact for or against the claimant, such a rule would be unnecessary and would thus not apply; the finding would simply follow the clear direction of the evidence." *Id.* at 33. The Senate Committee did share the desire to codify in statute the "reasonable doubt" standard "to ensure that the VA's present practice of making every effort to award a benefit to a claimant is not abandoned." *Id.* at 32. In any event, what controls now is not the language of prior regulations but the statutory standard of 38 U.S.C. § 3007(b).

## C.

It is important that note be taken of some of the limits of the "benefit of the doubt" rule. It does not apply during the process of submitting or gathering evidence. The statute provides that it becomes an issue only "after consideration of all evidence and material of record." Section 3007(b). Moreover, the rule does not apply to each and every issue; by its terms, it applies only to "the merits of an issue *material to the determination of the matter.*" *Id.* (emphasis added). Finally, the rule does not ease the veteran's initial burden of proof. Read together, § 3007(a) and (b) establish and allocate chronological obligations. Pursuant to § 3007(a) the initial obligation rests with the veteran: "A person who submits a claim ... shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." Under § 3007(b) the "benefit of the doubt" rule does not shift "from the claimant to the [Secretary]" the initial burden to submit a facially valid claim. Thus, the submission of a facially valid claim is necessary; inherently incredible allegations of injury would obviously not suffice. Once a veteran's initial burden is met, the Secretary is then obligated under § 3007(a) to "assist such a claimant in developing the facts pertinent to the claim." When all of the evidence is assembled, the Secretary, or his designee, is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied.

Perhaps the analogy most helpful to an understanding of the application of the "benefit of the doubt" rule was provided by Deputy Assistant General Counsel Mullen at oral argument when he stated that the "benefit of the doubt" standard is similar to the rule deeply embedded in sandlot baseball folklore that "the tie goes to the runner." If the ball clearly beats the runner, he is out and the rule has no application; if the runner clearly beats the ball, he

is safe and, again, the rule has no application; if, however, the play is close, then the runner is called safe by operation of the rule that "the tie goes to the runner." (It should be noted that there is no such formal Major League rule; the closest is Rule 7.01 which provides that: "A runner acquires right to an unoccupied base when he touches it before he is out." *1990 Official Baseball Rules*.) Similarly, if a fair preponderance of the evidence is against a veteran's claim, it will be denied and the "benefit of the doubt" rule has no application; if the veteran establishes a claim by a fair preponderance of the evidence, the claim will be granted and, again, the rule has no application; if, however, the play is close, *i.e.*, "there is an approximate balance of positive and negative evidence," the veteran prevails by operation of 38 U.S.C. § 3007(b).

## IV.

### The "Reasons or Bases for ... Findings and Conclusions" Requirement

Prior to the enactment of the VJRA, except in the case of constitutional challenges, *see, e.g., Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the decisions of the Secretary in denying veterans benefits were unreviewable by the federal courts. The Board was the highest appellate body to which an aggrieved claimant could appeal. That day, however, has passed. Congress has changed the structure of the veterans benefits adjudication system and BVA decisions are now subject to judicial review by this Court.

One of the changes brought about by the VJRA was an amendment to 38 U.S.C. § 4004(d). Prior to the enactment of the VJRA, the decisions of the Board were required only to be in "writing and ... contain the findings of fact and conclusions of law separately stated." 38 U.S.C. § 4004(d) (1982). Congress amended 38 U.S.C. § 4004(d), effective as of January 1, 1989, to mandate that a "decision of the Board shall include ... a written statement of the Board's findings and conclusions, *and the reasons or bases for those find-*

*ings and conclusions,* on all material issues of fact and law presented on the record." 38 U.S.C. § 4004(d)(1) (1988) (emphasis added).

The legislative history of § 4004(d)(1) offers insight as to what Congress intended by adding the requirement of "reasons or bases" to BVA decisions. The Senate Committee proposed that 38 U.S.C. § 4004(d) be changed to "expand the present requirement that BVA decisions be in writing and contain findings of fact and conclusions of law separately stated [and] to require that such decisions include findings and conclusions and reasons and bases therefor, on all material issues of fact, law, and matters of discretion...." 134 Cong.Rec. S16653 (daily ed. Oct. 18, 1988) (Explanatory Statement on the Compromise Agreement on S.11, as Amended, the "Veterans' Judicial Review Act"). One reason given for this change, which was adopted in the final version of the VJRA, was to provide "a decisional document from the Board that will enable a claimant to understand, not only the Board's decision but also the precise basis for that decision, and [will] also permit a claimant to understand the Board's response to the various arguments advanced by the claimant." S.Rep. No. 418, 100th Cong., 2nd Sess. 38 (1988). Moreover, the Committee provided another explanation for the change: *"[T]he decisional document should assist the reviewing court to understand and evaluate the VA adjudication action." Id.* (emphasis added).

The requirement that administrative decisions be supported by "reasons or bases" has long been recognized by the judiciary as necessary to facilitating judicial review. In *SEC v. Chenery (Chenery II),* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) the Supreme Court held that

If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from

what the agency has left vague and indecisive.

*Id.* at 196–97, 67 S.Ct. at 1577.

Recently, the United States Court of Appeals for the District of Columbia held that "[t]he basis for an administrative decision, of course, must be clear enough to permit effective judicial review." *International Longshoremen's Assoc. v. National Mediation Board,* 870 F.2d 733, 735 (D.C.Cir. 1989).

■ In view of the mandate of § 4004(d)(1) that the BVA articulate with reasonable clarity its "reasons or bases" for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor "clear enough to permit effective judicial review", nor in compliance with statutory requirements.

In the future, it may well be that the Board will find it easier to fulfill this mandate since Congress recently imposed a similar requirement on the Secretary when claims are denied. In 1989, Congress enacted 38 U.S.C.A. § 3004(a)(2) (West Supp. 1990), which provides that "[i]n any case where the Secretary denies a benefit sought, the notice ... shall also include (A) a statement of the reasons for the decision, and (B) a summary of the evidence considered by the Secretary." The legislative history makes it clear that this requirement "would not be met by such terms as 'service connection not found' or other such conclusory statements." 135 Cong.Rec. S16466 (daily ed. Nov. 21, 1989) (Explanatory Statement on the Compromise Agreement on H.R. 901 as Amended, the "Veterans Benefits Amendments of 1989").

The Supreme Court has held that where the "failure to explain administrative action ... frustrate[d] effective judicial review, the remedy was ... to obtain from the agency ... such additional explanation of the reasons for the agency decision as may prove necessary." *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). Thus, "[t]he proper course in a case with an inadequate record is to vacate the agency's decision and to remand the matter to the agency for further proceedings." *Occidental Petroleum Corp. v. SEC,* 873 F.2d 325, 347 (D.C.Cir.1989); *see Camp,* 411 U.S. at 143, 93 S.Ct. at 1244; *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985).

V.

Review of Findings of Fact and Benefit of the Doubt Determinations

■ This Court will not be called upon to review cases in which the BVA found that a veteran has prevailed by a fair preponderance of the evidence or determined that there was an "approximate balance of positive and negative evidence" such that the veteran was entitled to the benefit of the doubt as a matter of law. The cases which will come before this Court will be those in which the Board concluded that the fair preponderance of the evidence was against the claim and the veteran is not entitled to the benefit of the doubt. As is obvious from its choice of the words "approximate balance," Congress recognized that a determination under § 3007(b) is necessarily more qualitative than quantitative; it is one not capable of measurement with mathematical precision and certitude. Equal weight is not accorded to each piece of material contained in a record; every item of evidence does not have the same probative value. Judgments must be made but they must be accompanied by "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact or law presented on the record." 38 U.S.C. § 4004(d)(1). It will be our task as a court of review to determine in the cases brought before us whether the Board's findings of fact were clearly erroneous and whether the Board's application of the "benefit of the doubt" rule of BVA

was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 4061(a)(3)(A) (1988).

In many, perhaps most, cases, the decision of the Board on issues of material fact, and the review of that decision by this Court, will be inextricably intertwined with the determination of whether the veteran is entitled to the benefit of the doubt. Where findings of material fact by the Board are properly supported and reasoned, and the Board concludes that a fair preponderance of the evidence weighs against the claim of a veteran, it would not be error for the Board to deny the veteran the benefit of the doubt. Such a denial would not be subject to reversal under § 4061(a)(3)(A) as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" because it was premised upon a rational basis and supported by appropriate and relevant factors which were properly articulated. *See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866–2867, 77 L.Ed.2d 443 (1983). Nor would the denial of the benefit of the doubt be "in violation of a statutory right." Section 4061(a)(3)(C). Any right to the benefit of the doubt could only accrue when there is "an approximate balance of positive and negative evidence." A properly supported and reasoned conclusion that a fair preponderance of the evidence is against the claim necessarily precludes the possibility of the evidence also being in "an approximate balance." Section 3007(b).

On the other hand, there may be a few cases in which a conclusion by this Court that factual findings by the Board are not clearly erroneous would not determine the "benefit of the doubt" issue. While there may be support in the record for the Board's findings, there also may be evidence which supports a contrary conclusion; indeed, there may be "two permissible views" (*Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511). If such evidence is in the record, and the Board failed to include an adequate statement of the "reasons or bases" for its findings or for its conclusion,

either explicit or implicit, that the veteran was not entitled to the benefit of the doubt, the application of § 3007(b) may well have been arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. Remand, with a direction that the Board submit its "reasons or bases" as required by 38 U.S.C. § 4004(d)(1), or, in the rare case, reversal would be required.

## VI.

We now review the case at hand in light of the "clearly erroneous" standard of § 4061(a)(4), the "benefit of the doubt" rule of § 3007(b) and the "reasons or bases" requirement of § 4004(d)(1) which were in effect on September 18, 1989, the date of the BVA decision.

The evidence against the veteran's claim in this case is essentially negative in that it consists of the absence of any clinical evidence of back injury during military service in the report of his separation physical examination, which was signed by the veteran, the passage of over a decade before the veteran pursued a claim, and reports of back injuries due to subsequent automobile and work-related accidents. The positive evidence in favor of the veteran consists of the fact that the probative value of the separation physical examination report is subject to question since it is acknowledged to be lacking in information on other illnesses and hospitalizations, signed (but unsworn) statements by family members that back problems existed immediately after service, and the consistent subsequent reports by the veteran of injury during service to treating physicians under circumstances unrelated to pursuit of veterans benefits which may lend at least some degree of validity to his claim.

The BVA concluded, first, that the veteran had failed to demonstrate that he had sustained a back injury during service or, second, that if such an injury did occur, it was of an acute and transitory nature and did not result in the current disability. In his brief, the Secretary, relying upon the holding of the Supreme Court in *Anderson*, argues that the Court cannot reverse a factual determination by the BVA if there

is either (1) a "plausible" basis for the Board's decision or (2) if "there are two permissible views of the evidence and the fact-finder chose between them." The Secretary, apparently with great care, does not take a position as to which argument controls this case. Although the factual findings by the BVA are indeed supported by evidence of record, or, more accurately, the lack of such evidence, there also is evidence of record which supports the veteran's claim. The decision here contains neither an analysis of the credibility or probative value of the evidence submitted by and on behalf of the veteran in support of his claim nor a statement of the reasons or bases for the implicit rejection of this evidence by the Board.

Moreover, the BVA addressed the "benefit of the doubt" issue only in the barest of conclusory terms. The statute itself, 38 U.S.C. § 3007(b), is not cited and the decision merely states that "the Board does not find that that doctrine would warrant allowance of the benefit sought on appeal." *Gilbert* at 8. If, as the Secretary appears to argue, there are indeed "two permissible views" of the evidence, there must be a determination whether there is or is not an "approximate balance of the positive and negative evidence" and a statement of the "reasons or bases" for the determination. It may well be that there are "reasons or bases" for denying the claim and for concluding that the evidence is not in equipoise such that the veteran is not entitled to the benefit of the doubt. However, the decision here contains neither an evaluation of the "positive" evidence, nor a weighing of the "positive and negative evidence", nor a § 4004(d)(1) statement of the "reasons or bases" for the bare conclusion that the "benefit of the doubt" doctrine does not apply. If the veteran is to be able to understand the reason for the denial of his claim, and if our review is to be an informed one, strict adherence by the Board to the requirements of 38 U.S.C. § 4004(d)(1) is required.

Therefore, we remand the matter pursuant to 38 U.S.C. § 4052(a). The BVA is directed to comply promptly with the requirement of 38 U.S.C. § 4004(d)(1) that its findings and conclusions be accompanied by "reasons or bases" adequate to explain both to the veteran and to this Court its factual findings and its conclusion that the veteran is not entitled to the "benefit of the doubt" under 38 U.S.C. § 3007(b). We will retain jurisdiction and direct that, upon completion of the remand proceeding, the Secretary supplement the record on appeal to include the further action of the Board. The supplemental record shall be filed with the Court and a copy served upon the appellant.

*It is so Ordered.*

KRAMER, Associate Judge, concurring.

I concur with the decision of the majority to remand this case back to the Board of Veterans' Appeals (BVA) for it

> to comply promptly with the requirement of 38 U.S.C. § 4004(d)(1) that its findings and conclusions be accompanied by 'reasons or bases' adequate to explain both to the veteran and to this Court its factual findings and its conclusion that the veteran is not entitled to the 'benefit of the doubt' under 38 U.S.C. § 3007(b).

*Ante* at 58. However, to the extent that the majority opinion could be read to suggest that this Court will always affirm BVA determinations that the statutorily mandated "benefit of the doubt" standard of proof is not applicable as long as the BVA has provided reasons or bases for that determination, I write separately to emphasize that I believe that such an approach would be too restrictive. While I agree that the failure to list reasons and bases is a proper ground for this Court to remand a BVA decision not to apply the "benefit of the doubt" standard, I do not believe that the mere listing of the reasons or bases is enough for this Court to affirm such a decision. This Court must also be convinced after considering those reasons or bases that the BVA decision not to apply the "benefit of the doubt" standard was not in violation of 38 U.S.C. § 3007(b) (1988).

When reviewing BVA decisions that the "benefit of the doubt" standard does not

apply, there are three statutory sections that must be considered.

First, there is the "benefit of the doubt" standard itself contained in 38 U.S.C. § 3007(b) (1988):

(b) When, after consideration of all evidence and material of record in a case before the [Department of Veterans Affairs (Department)] with respect to benefits under laws administered by the [Department] there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant....

Second, there are the key provisions of this Court's scope of review regarding the "benefit of the doubt" standard contained in 38 U.S.C. § 4061 (1988):

(a) In any action brought under this chapter, the Court of Veterans Appeals, to the extent necessary to its decision and when presented, shall—

(1) decide all relevant questions of law, interpret ... statutory ... provisions ...

 * * * * * *

(3) hold unlawful and set aside decisions, findings (other than those described in clause (4) of this subsection), ... [and] ... conclusions ... issued or adopted by ... the Board of Veterans' Appeals ... found to be—

(A) ... not in accordance with law;

 * * * * * *

(C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or

 * * * * * *

(4) in the case of a finding of material fact made in reaching a decision in a case before the [Department] with respect to benefits under laws administered by the [Department], hold unlawful and set aside such finding if the finding is clearly erroneous.

Third, and finally, there is the requirement of reasons or bases contained in 38 U.S.C. § 4004(d)(1) (1988):

(d) Each decision of the [BVA] shall include—

(1) a written statement of the [BVA]'s findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record; ...

Thus, when § 4004(d)(1) has been complied with and this Court is reviewing BVA decisions not to apply the "benefit of the doubt" standard, it is engaged in two separate analyses. First, the Court must determine if the BVA's findings of material fact made in reaching its decision were clearly erroneous pursuant to § 4061(a)(4). Second, after making these determinations, this Court must use them and apply § 4061(a)(1), (3) to decide whether the BVA's decision not to apply the "benefit of the doubt" standard was in accordance with § 3007(b). It is crucial to understand, however, that though these two analysis are interrelated, they are still made independently of one another and under different scopes of review.

The "benefit of the doubt" standard is a standard of proof statutorily mandated by 38 U.S.C. § 3007(b). As such, review by this Court as to whether this standard of proof has been correctly applied by the BVA does not constitute review of a finding of material fact which would invoke the clearly erroneous test of 38 U.S.C. § 4061(a)(4). Rather, it is a *separate* review made pursuant to 38 U.S.C. § 4061(a)(1), (3) to determine whether in light of these reviewed findings of material fact, the refusal to apply the § 3007(b) mandated standard was not "in accordance with law," not "in excess of statutory jurisdiction, authority, or limitations," and not "in violation of a statutory right." 38 U.S.C. §§ 4061(a)(3)(A), (C). *Cf. United States v. Samuels*, 801 F.2d 1052, 1057 (8th Cir.1986) (When reviewing the sufficiency of the evidence supporting a verdict, the reviewing court, though it may not judge the creditability of that evidence, must "inevitably determine the weight that should

be accorded to [it].”), *Vance v. Southern Bell Telephone and Telegraph*, 863 F.2d 1503, 1515 (11th Cir.1989) (When deciding whether to grant a judgment not withstanding verdict, the court is “free to weigh the evidence” itself.), *United States v. Bright*, 550 F.2d 240, 242 (5th Cir.1977) (When determining whether facts are sufficient to support a verdict, the court applies a “legal test.”). *See generally Office of Communication of the United Church of Christ v. F.C.C.*, 707 F.2d 1413, 1423 (D.C.Cir.1983) (It is the “quintessential function of the reviewing court” to strike down agency actions that are inconsistent with statutory mandate.), *Securities Exchange Commission v. Sloan*, 436 U.S. 103, 119, 98 S.Ct. 1702, 1712, 56 L.Ed.2d 148 (1978) (“Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of agency decisions that they deem inconsistent with statutory mandate.”) (citations omitted.)

The only effect 38 U.S.C. § 4004(d)(1) has on these two analyses is that it requires the BVA to list its reasons or bases for both its findings of material fact and its decision not to apply the “benefit of the doubt” standard. The requirement of reasons or bases is only meant to provide the veteran and this Court with help in understanding whether such findings and decisions were in accordance with §§ 4061(a) and 3007(b). Section 4004(d)(1)'s requirements are not meant to replace, nor lower, the scope of review this Court will apply when making these determinations. Reasons or bases may or may not justify such findings and decisions. No amount of reasons or bases, no matter how articulately made, can justify that which is not justifiable.

The determination of how these three statutory provisions interact constitutes a decision of far reaching importance to the development of this Court. If this Nation's veterans are truly to have the benefit of independent judicial review as envisioned by the Veterans' Judicial Review Act, 38 U.S.C. §§ 4051–4092 (1988) (VJRA), it must be real judicial review, not just the appearance thereof. To adopt a framework which is too deferential to the BVA will be con-

trary to the congressional intent in passing the VJRA as it will leave the BVA, not the judiciary, as the final arbiter of “benefit of the doubt” determinations. I do not believe the majority intends this result, especially in light of its elegant recognition that:

> This unique standard of proof [the ‘benefit of the doubt’ standard] is in keeping with the high esteem in which our nation holds those who have served in the Armed Services. It is in recognition of our debt to our veterans that society has through legislation taken upon itself the risk of error when, in determining whether a veteran is entitled to benefits, there is an ‘approximate balance of positive and negative evidence.’ By tradition and by statute, the benefit of the doubt belongs to the veteran.

*Ante* at 54. Therefore, I respectfully add this concurrence.