Alexander T. SHEED, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–256.

United States Court of Veterans Appeals.

Submitted July 9, 1991.

Decided March 23, 1992.

As Amended April 8, 1992.

Alexander T. Sheed, pro se.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Jacqueline E. Monroe were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Associate Judges.

IVERS, Associate Judge:

Alexander T. Sheed appeals from a December 20, 1989, Board of Veterans' Appeals (BVA or Board) decision which denied service connection for a psychiatric disability, to include post traumatic stress disorder, and which denied a total rating for compensation purposes based on individual unemployability. The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)). Upon consideration of the record, appellant's informal brief, and appellee's motion, the Court holds that the Board failed to provide adequate reasons or bases for its decision denying service connection for the psychiatric disability; that the Department of Veterans Affairs (VA) failed in its duty to assist the veteran in obtaining medical records; and that the BVA exaggerated the veteran's level of education in denying him individual unemployability. Accordingly, appellee's motion for summary affirmance is denied, and we vacate the BVA decision and remand the case for readjudication consistent with this opinion.

## FACTS

The veteran served in the U.S. Army from 1963 to 1965 and from 1980 to 1985. R. at 1, 51. Between these periods of active service, the veteran served in the active and inactive reserves, including a period in which he served as an Army Reserve recruiter. R. at 51, 403. His service medical records covering the first tour of active service are negative for any psychiatric abnormality, except for one consultation report dated August 28, 1964, in which it was reported that the veteran requested a psychiatric evaluation after voicing a number of complaints about his sergeant and his job. The report stated that Mr. Sheed seemed "unduly disturbed about his external reality situation—i.e., his NCO's, and how he should best avoid the restrictions they place on him." The doctor felt that Mr. Sheed wanted very much to be transferred out of his present unit for psychiatric reasons but that his mental status at the time gave no reasons for concern.

The doctor's impression was that Mr. Sheed was possibly a sociopathic personality. R. at 25. The psychiatric evaluations given in 1965 upon separation and in 1974 as part of an examination for reserve training were normal. R. at 37, 47.

In November 1983, the veteran was treated at Walson Army Community Hospital in Fort Dix, New Jersey, for several problems. At this time it was noted in the medical record that Mr. Sheed complained of being pressured at his job and that he seemed to be suffering from "severe job-related stress". R. at 98, 101. In January 1984, Mr. Sheed was admitted to the Army hospital in Fort Dix for evaluation for chest pain, and it was determined that he had suffered a slight heart attack that week. Mr. Sheed related his condition to his job stress and stated that he had been seen for stress management at a mental health facility. R. at 103–105.

In February 1984, the veteran was seen by a VA doctor for further evaluation of psychosomatic problems and psychosocial stress. The VA psychiatric note stated that Mr. Sheed felt considerable apprehension with regard to people within his unit and that he felt "threatened from all sides", noting problems with neighbors and with his thirteen year old son. The doctor wondered whether Mr. Sheed was "exteriorizing his problems within at least to some extent." The doctor's impression was that "[p]sychological [f]actors [were] affecting physical condition." R. at 280. An April 27, 1984, medical board report stated that while Mr. Sheed was being observed and evaluated at the Army hospital at Fort Dix in February,

> ... two people from his Unit came and gave him an evaluation which upset him tremendously and he became very stressful. At that point, he was referred to Psychiatry for evaluation because of his extreme anxiety. He was seen by the psychiatrist who felt it was an adjustment disorder and anxiety. He gave him an appointment with Community Mental Health Service and Social Work Service.

R. at 111.

In May 1984, the veteran received a VA medical examination. The clinical evalua-tion checklist included in this examination report showed no check mark in either of the boxes designated "abnormal" or "normal" for psychiatric problems. R. at 115. During this examination, Mr. Sheed again reported that he had been treated for stress at a mental health clinic, specifically naming the Fort Dix Mental Health Clinic. R. at 114. There are no medical records from the mental health facility in the record on appeal, but the veteran's claims regarding treatment at the clinic between November 1983 and January 1984 were corroborated by a letter dated February 8, 1989, from the Unit Administrator of the unit in which Mr. Sheed had served at that time. R. at 363. Moreover, Mr. Sheed claimed on his VA Form 1–9, Appeal to Board of Veterans Appeals, dated February 10, 1989, that "records for major depression go all the back [sic] to the time of my recruiting days, 1978–1981." Mr. Sheed recalled that during this time his job-related stress became so severe that he began to have recurring nightmares of having killed the station commander, and, after an incident of potential violence occurred, he was admitted to the Philadelphia Naval Hospital for approximately two weeks. R. at 360, 373, 377–78. The record contains a statement of a recruiting specialist who worked with Mr. Sheed at this time. He recalled that Mr. Sheed "made some sort of threat to [h]is [s]tation [c]ommander. ... The threat was serious enough for Sheed to be taken out of the recruiting station and admitted to the Naval Hospital for some period of time." R. at 362. Mr. Sheed claims that the Army informed him that the records from the Naval Hospital have "disappeared from St. Louis Files." R. at 360, 378.

The veteran suffers from a number of physical ailments for which he is service-connected: lumbosacral strain with degenerative arthritis and nerve root irritation— 40% from 8/25/86; subendocardial infarction with hypertension—30% from 7/23/85; degenerative joint disease, heels and knees, with calcaneal spurs—10% from 7/1/87; chronic prostatitis—10% from 10/30/87; internal hemorrhoids—0% from 7/23/85.

His combined rating has shifted between 50% and 70% in recent years as follows: 50% from 7/23/85; 70% from 8/25/86; 60% from 7/1/87; and 70% from 10/30/87. R. at 346. The veteran was retired from the service in 1985 when an Army Physical Evaluation Board concluded that his "physical condition prevents satisfactory performance of duty...." R. at 160.

In a letter dated April 30, 1987, Dr. Dennis Zaslow, a private physician, stated that he felt that Mr. Sheed "is disabled to the point that he is not able to work." He also noted more specifically that Mr. Sheed "is to do no lifting or bending at all. He would have difficulty doing any longstanding [sic], bending or lifting." R. at 216. Mr. Sheed testified at a hearing before the Board in October 1989 that he last worked as a truck driver in 1988, a job in which his son assisted him by doing most of the driving. Mr. Sheed claims that he could not sit in the truck for long periods of time because of pain, particularly pain caused by his chronic prostatitis. He testified that when his employer discovered that Mr. Sheed was taking pain relievers with codeine he was fired. R. at 389–90.

In 1988, a VA psychiatrist diagnosed Mr. Sheed as having major depression, the symptoms of which "are chronic and date back to 1984/85." The psychiatrist further opined that "[t]here does seem to be an association of these symptoms to other s[ervice-] c[onnected] conditions. Whether it is secondary to them, I cannot say." R. at 343.

## ANALYSIS

### I. The Reasons or Bases for Denying Service Connection for a Psychiatric Disability

■ With regard to the veteran's claim for service connection for a psychiatric disability, the BVA did not provide adequate reasons or bases for denying the claim as required under 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) and *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). In denying the claim, the Board noted with regard to the veteran's second period of active service that he was treated at a mental health center in 1983, but that a psychiatric assessment made during that time did not diagnose a "chronic psychiatric disability" but rather "a situational reaction associated with anxiety."

Thereafter, there is no medical evidence of any psychiatric disablement until mid–1988, approximately three years later, when he presented with depression [sic]. Although he reported a history of psychiatric symptoms dating from his retirement from service, this history is not confirmed by the contemporaneous medical record. That record shows only that he was briefly treated for stress-related psychiatric symptoms on two occasions during service which were separated by an approximately 20–year interval. These symptoms were apparently situational in nature, since, on both occasions, they resolved [sic] prior to separation from service. The first objective evidence of chronic psychiatric disability dates from approximately three years after he was retired from the service. Based on this evidence, we are unable to conclude that a chronic psychiatric disability was present in service, or that major depression was manifested to a compensable degree within a year of separation from service.

... In the absence of medical evidence of continuity of pertinent symptomatology during that interval [i.e., the three year period after the veteran's separation from service], we are unable to conclude that the chronic psychiatric disability is related to the stress encountered during service or to any other incident of service.

*Alexander T. Sheed,* BVA 89–07407, at 9 (Dec. 20, 1989).

With regard to the part of the 1988 VA psychiatric report where the psychiatrist stated that the symptoms of Mr. Sheed's major depression were "chronic and date back to 1984/85", the Board was silent. However, this medical opinion relating chronicity back to the veteran's term of active service appears to offer at least some "medical evidence of continuity of pertinent symptomatology". The Board is

required to provide adequate reasons or bases, consistent with 38 U.S.C. § 7104(d)(1) and this Court's holding in *Gilbert*, for its rejection of this medical evidence that Mr. Sheed's symptoms date back to his active service.

■ Service connection may be granted for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). With regard to the part of the 1988 VA psychiatric report where the psychiatrist stated that "[t]here does seem to be an association of these symptoms to other s[ervice-] c[onnected] conditions" but could not confirm whether or not the veteran's psychiatric symptoms were secondary to those conditions, the reason stated by the Board for rejecting this theory of causal connection between the veteran's depression and his service-connected physical disabilities was again inadequate under the standard articulated by this Court in *Gilbert*. That standard requires that the Board "articulate with reasonable clarity its 'reasons or bases' for decisions, ... identify those findings it deems crucial to its decision and account for evidence which it finds to be persuasive or unpersuasive." *Gilbert*, 1 Vet.App. at 57. Here, the BVA acknowledged that there was "psychiatric opinion suggesting a possible causal relationship between the major depression and the service-connected disabilities," but rejected the possible nexus, stating only that "we do not find sufficient objective evidence to support this hypothesis." *Sheed*, BVA 89–07407, at 9.

## II. The Duty to Assist

The veteran reported that during his second tour of active service he had been treated for stress at the Fort Dix Mental Health Clinic and that he had been admitted to the Philadelphia Naval Hospital for severe job-related stress. Although the Board acknowledged in its decision that the veteran was treated at a community mental health center over an approximately three-month period for stress-related issues, no medical records from the clinic are in the record on appeal, and there is no evidence that the VA attempted to obtain these records. Although the veteran stated that the Army informed him that the records from the Naval Hospital were missing, the BVA mentions this hospital stay only in the "Evidence" section of its decision and does not discuss it further, nor does it explain what attempts had been made by the VA to obtain these records. R. at 360, 378.

■ The VA has a statutory duty to assist a veteran in developing facts pertinent to his claim. 38 U.S.C. § 5107(a) (formerly § 3007(a)); *Littke v. Derwinski*, 1 Vet.App. 90, 91 (1990). That duty includes assisting the veteran in obtaining medical records. *See Littke*, 1 Vet.App. at 91–92; *Jolley v. Derwinski*, 1 Vet.App. 37 (1990); *Murphy v. Derwinski*, 1 Vet.App. 78 (1990). Medical records from facilities in which the veteran was treated for stress or psychiatric disorders during his period of active service are certainly pertinent to his claim for service connection for a psychiatric disability. Such records may provide enough evidence for service connection in themselves or they may provide the additional objective evidence that the Board claimed was needed to support the theory that the veteran's psychiatric symptoms were caused by his service-connected physical ailments. Therefore, the VA has a duty to assist the veteran in obtaining these records.

## III. Individual Unemployability

■ "Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when [a veteran] is unable to secure or follow a substantially gainful occupation by reason of service-connected disabilities." 38 C.F.R. § 4.16(a) (1991). With regard to the veteran's claim for individual unemployability, the Board noted but did not discuss Dr. Zaslow's statement in his letter of April 30, 1987, that the veteran "is disabled to the point that he is not able to work." R. at 216. Instead the Board focused on Dr. Zaslow's statements regarding restrictions on the veteran's abilities to perform certain physical functions, such as lifting and bending. In this regard the Board acknowledged that the nature and severity of

the veteran's physical disabilities impaired to a substantial degree his ability to lift, bend, or walk long distances. However, it concluded that these disabilities would not preclude the veteran "from the performance of some form of relatively sedentary work for which he is qualified *by virtue of his education,* training, and occupational experience." *Sheed,* BVA 89–07407, at 10 (emphasis added). With regard to Mr. Sheed's education, the Board exaggerated the facts when it found that Mr. Sheed had "attended college for approximately one year." The veteran testified at the hearing before the Board that, although he attended a community college for a full term, he only took two typing courses, Typing I and II. R. at 397. It would seem that completion of these courses hardly constitutes the equivalent of one semester or term of college, let alone a full year. Therefore, the Board should reevaluate the veteran's claim for individual unemployability in light of the level of education he actually attained and in light of Dr. Zaslow's statement that the veteran is unable to work because of his disabilities.

### CONCLUSION

For the reasons stated above, the appellee's motion for summary affirmance is denied, the decision of the BVA is VACATED and the case REMANDED for readjudication consistent with this opinion.