**Terrence D. BAKER, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–736.**

United States Court of Veterans Appeals.

April 27, 1992.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The pro se appellant, veteran Terrence D. Baker, appeals from an April 6, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying service-connected disability compensation for a psychiatric disorder. Because the Court finds that the BVA failed to provide an adequate statement of its conclusions and the reasons or bases for those conclusions, the matter will be remanded for readjudication and compliance with the statutory reasons or bases requirement.

### I.

The veteran had active service in the U.S. Air Force from November 7, 1957, to August 21, 1962. R. at 10. His was treated on various occasions between August 1961 and March 1962 for persistent nausea and vomiting. R. at 47–53. An August 4, 1961, treatment record noted that the veteran had experienced "marked nausea" for the previous month. R. at 47. That report also noted that the veteran had recently been transferred and he "[h]ad planned on getting out of the service but apparently will be involuntarily extended." R. at 47. An Air Force physician examined him for conditions related to his nausea in March 1962, and stated that physical examinations, laboratory studies, X-rays, and a review of systems were all essentially negative. The examiner recorded an impression of "psycho-physiological gastro-intestinal tract reactions", and stated: "I was unable to detect any area of insight by the patient into this problem." R. at 53. The examiner further stated: "It is my feeling that his symptomatology might impair his efficiency as a flight personnel [sic]." An undated in-service treatment record stated that the veteran had a "functional nervous disorder". R. at 52. An August 13, 1962, separation examination report indicates no complaints or findings of gastro-intestinal or psychiatric problems. R. at 60–61.

It appears from the record that the veteran's service obligation was "involuntarily extended". While in service, the veteran was chosen to receive combat crew training as a navigator in the Air Force Strategic Air Command. R. at 153–54. When he entered that program he was apparently informed, and it was marked on his record, that he would incur a two-year service obligation upon completion of that course, resulting in a service completion date of November 19, 1961. R. at 154–55. A letter from an Air Force officer dated in 1961 indicates that an Air Force policy effective November 1960 "established a service obligation of 4 years after completion of the course[;] however, the previous page describing the course did not specify any definite obligation." R. at 154. On the

basis of that change, the veteran's service obligation was extended until November 19, 1963. R. at 154. After the veteran had filed several complaints, and a Congressman had intervened on his behalf, Air Force personnel admitted that the veteran was led to believe that he would incur only a two-year commitment, and therefore the Air Force would recognize his right to apply for early release upon completion of his two-year commitment. R. at 160. The veteran subsequently applied for release by November 20, 1961, but was unable to receive a discharge until August 21, 1962. R. at 10, 162.

A rating decision by the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) on January 26, 1983, denied service-connected compensation for, among other things, a nervous condition. R. at 64. In 1985, the veteran attempted to reopen his claim and presented testimony at a personal hearing before the RO. R. at 76. The claim was denied on the ground that the testimony did not present new and material evidence. R. at 89.

The veteran again sought to reopen his claim in 1988, submitting records reflecting treatment for depression between 1977 and 1985, R. at 100–110, a January 4, 1988, statement from a physician, Dr. Philip Matin, who knew the veteran during service, and a January 11, 1988, statement from a VA psychiatrist, Dr. George F. Solomon. Dr. Matin stated:

> The pressures of constantly being on alert for the Strategic Air Command, and having to navigate the KC 135 to a rendezvous site over the ocean to refuel Strategic Air Command appeared to take a great toll on [the veteran].... He appeared to become very depressed when he was transferred to Marquette, Michigan, and complained to me and his other friends that he was depressed and had headaches.

.  .  .  .  .

During his time as a student in the Bay area, probably in about 1963, he began to complain more bitterly of headaches and depression.

.  .  .  .  .

> Terry's life seems to have gone downhill since the days in the Air Force. To me, the most precipitating factors were the stress of his duties as a navigator and the disappointment he experienced when his active duty commitment was apparently extended.

R. at 111. Dr. Solomon stated that he had treated the veteran in 1965 and had "found him to be depressed" and that the veteran had "related his depressive complaints to feelings of injustice at the hands of the Air Force." R. at 112.

The veteran appeared at a personal hearing on June 1, 1989, and testified under oath that the involuntary extension of his service obligation precipitated nausea and that thereafter he had become extremely nauseous in the face of any kind of stressful activity. R. at 137–38. He further testified that he did not seek treatment for his psychiatric problems during service because "I wouldn't admit to myself and I certainly didn't want to admit to my, uh, bosses or the authorities that I had a psychological problem because I didn't know when I was going to get out and I thought it would reflect badly on my effectiveness reports and on my working relationships with people." R. at 140. In a June 14, 1989, letter submitted to the RO, the veteran stated: "The reason that I did not bring up the [psychiatric] condition at my separation physical (August, 1962) was that I was afraid that they would keep me in longer (exacerbating the condition), and I only had two weeks to get to College of Marin in Kentfield, California where classes were to begin Sept. 4, 1962". R. at 148.

The veteran was subsequently examined by a VA physician on July 15, 1989, for purposes of determining his current disabilities, and was diagnosed with "Major depression, recurrent and schizoid personality." R. at 171.

In its April 6, 1990, decision, the BVA denied service connection for depression and schizoid personality disorder. *Terrence D. Baker*, BVA 90–08402 (Apr. 6,

1990) (hereinafter *Baker*). The Board found: "The veteran's complaints which resulted in a diagnosis of psychophysiological gastrointestinal reaction during service were acute and transitory, subsiding without residual disability." *Id.* at 7. The Board stated: "While the private physician who examined the veteran in 1962 concluded that he had a psychophysiological gastrointestinal reaction, this diagnosis is not corroborated by any contemporaneous findings, by any service medical records, or by any postservice medical records." *Ibid.* Additionally, the BVA concluded: "The veteran's currently diagnosed major depression did not have its onset until many years after his separation from active duty." *Ibid.* In discussing the statements of Drs. Matin and Solomon, the Board stated:

> Although the statements of a VA psychiatrist and Dr. Matin are matters for consideration, those statements are not supported by medical records prepared in service and in the late 1970's and early 1980's. The VA psychiatrist examination in June 1989 diagnosed the veteran as having major depression and schizoid personality. Neither psychiatric abnormality is shown to have been present until many years after the veteran's separation from active duty.

*Ibid.* Additionally, the Board found that the schizoid personality disorder was in the nature of a congenital or developmental disorder and was not a disability for VA compensation purposes. *Ibid.*

## II.

█ The Court holds that the evidence submitted by the veteran since the prior final disallowance of his claim is clearly "new and material" for purposes of requiring the claim to be reopened under 38 U.S.C. § 5108 (formerly § 3008). Dr. Matin's statement provides a medical opinion that the veteran's· disability had its origins in service, and, thus, there is a "reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991).

█ However, the BVA failed to state adequate reasons or bases, as required by 38 U.S.C. § 7104(d)(1) (formerly § 4104), for its rejection of the statements of Drs. Matin and Solomon. Its finding that these physicians' statements "are not supported by medical records prepared in service and in the late 1970's and early 1980's" does not state a valid basis for rejecting the medical opinions and statements of Drs. Matin and Solomon. Contrary to the BVA's finding, the cited medical reports from the late 1970's and early 1980's undoubtedly support the diagnosis of depression. Medical reports from 1977, 1978, and 1981 all reflect medical impressions of depression. R. at 100, 102, 104. A 1983 report indicates an impression of schizoid personality disorder and notes that the veteran appeared depressed. R. at 92.

The BVA's finding that these records do not support the statements of Drs. Matin and Solomon seems to be predicated upon the fact that the reports from 1977 to 1983 indicate that the veteran reported to the examiners that his depression began sometime around 1971. R. at 91, 100, 104. However, the BVA does not clearly state this factor as the basis for its rejection of the two statements. Moreover, if the BVA was relying on the veteran's representations to examiners in the 1977–1983 reports, it failed to provide reasons or bases for its conclusion that those statements by the veteran to the examiners are inconsistent with, and more probative than, the two statements of medical opinion indicating that the veteran suffered depression during and within three years after service. Pursuant to the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1), "the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive.... A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor 'clear enough to permit effective judicial review', nor in compliance with statutory requirements." *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

The BVA also failed to provide adequate reasons or bases for its rejection of the in-

service diagnosis of psychophysiological gastrointestinal tract reaction. The Board stated: "[T]his diagnosis is not corroborated by any contemporaneous findings, by any service medical records, or by any post-service medical records. The first postservice evidence of a psychiatric problem was in July 1977 when he complained of depression." *Baker*, at 6. The Board failed to explain why it does not consider the letters of Drs. Matin and Solomon as providing corroboration of the in-service diagnosis of a psychiatric condition. The Board must consider and discuss those statements, indicating that the veteran suffered from depression in service and within three years of separation, in the context of its conclusion that "the first postservice evidence of a psychiatric problem was in 1977." *See Sheed v. Derwinski*, 2 Vet.App. 255, 258, (1992) (Board required to provide "adequate reasons or bases ... for its rejection" of "medical opinion relating chronicity back to the veteran's term of active service").

Finally, the Board failed to address the veteran's assertions, in his sworn testimony and his submissions to the RO, that he did not seek treatment for his psychiatric condition in service, nor mention it at his separation examination, because he was afraid of the repercussions of admitting to a possible psychiatric problem. A veteran's sworn testimony is evidence that the BVA must consider, and the Board's reasons or bases must include an analysis of the credibility and probative value of that evidence. *See Ohland v. Derwinski*, 1 Vet. App. 147, 149–50 (1991). Furthermore, the BVA's statement of reasons or bases must include "the Board's response to the various arguments advanced by the claimant." *Gilbert*, 1 Vet.App. at 56; *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991). Here, the veteran presented a plausible explanation for the absence of any notation of psychiatric problems at separation. Therefore, the BVA had a duty to deal with that explanation, particularly in light of the medical evidence that the veteran had had a long-standing gastrointestinal condition in service, which was diagnosed in service

by an Air Force examining physician as a psychophysiological reaction.

In view of the conflicting evidence concerning the cause of the veteran's current depression and the existence of the disorder during and shortly after service, the statutory duty to assist here "includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability is a fully informed one." *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991); *see Wilson v. Derwinski*, 2 Vet. App. 16, 21 (1991); *Parker v. Derwinski*, 1 Vet.App. 522, 526 (1991); *Moore v. Derwinski*, 1 Vet.App. 401, 405 (1991); *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991). On remand, the examiner should review the veteran's claims folder and express an opinion, supported by reasons, as to whether the veteran's current disability is in any way related to his service.

### III.

Upon consideration of the record, the appellant's informal brief, and the motion of the Secretary of Veterans Affairs (Secretary) for summary affirmance, it is held that the BVA failed to provide a statement of reasons or bases adequate to enable the claimant and this Court to understand the Board's evaluation of the evidence and its response to various arguments raised by the claimant. It is further held that this case is appropriate for summary disposition because the case is one "of relative simplicity" and the outcome is controlled by our precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet. App. 23, 25–26 (1990). Therefore, the April 6, 1990, BVA decision is vacated, and the matter is remanded to the BVA for readjudication and issuance of a new decision with an adequate statement of reasons or bases for each of the Board's findings and conclusions. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) (Remand is not "merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement of 38 U.S.C. § 7104(d)(1).... A remand is meant to entail a critical examination of the

justification for the decision."). A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which the new BVA decision is mailed to the appellant. The Secretary's motion for summary affirmance is denied, and his motion that his motion be accepted as a brief is granted.

VACATED AND REMANDED.