Citation Nr: 1504660 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 03-30 746 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for erectile dysfunction, secondary to medications taken for service-connected Reiter's syndrome.

3. Entitlement to service connection for pes planus.

4. Entitlement to service connection for a bilateral hip disability, secondary to pes planus or other service-connected disability.

5. Entitlement to service connection for a lumbar spine disability, secondary to pes planus or other service-connected disability.

6. Entitlement to an initial rating in excess of 20 percent for Reiter's syndrome.

7. Entitlement to an increased rating for chronic iritis.

8. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disability.


REPRESENTATION

Appellant represented by: Joseph R. Moore, Attorney


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Michael J. Skaltsounis, Senior Counsel


INTRODUCTION

The Veteran had active service from June 1969 to September 1979.

This case comes before the Board on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

In March 2007, the Veteran testified before a Veterans Law Judge at a Travel Board hearing. A copy of the hearing transcript is of record.

In a decision dated in March 2011, the Board denied of entitlement to service connection for PTSD and erectile dysfunction. The Veteran appealed that Board decision to the United States Court of Appeals for Veterans Claims. The Board had remanded the remaining issues for further development. By order dated in November 2011, the Court remanded this case to the Board pursuant to the terms of a Joint Motion for Remand.

Thereafter, in May 2012, the Board remanded the issues that were remanded by the Court for further development. However, in doing so, certain statements contained within the remand were found by the Veteran's attorney to indicate bias or prejudice on the part of the Veterans Law Judge who conducted the Veteran's Board hearing in March 2007. As a consequence, the Veteran's attorney filed a Motion to Disqualify the Veterans Law Judge from further acting in this appeal. 

The Motion to Disqualify was granted by the Board in October 2014. In view of the fact that the motion was granted, the Veteran was given an opportunity to have a hearing before another Veterans Law Judge, but did not make a timely request for another hearing following the Board's inquiry in October 2014. Thereafter, in correspondence dated in November 2014, the Veteran's attorney specifically indicated the Veteran "does not wish to attend a BVA hearing of any kind." 

While the appeal did not originally include a claim for TDIU, the Veteran's claim for increased rating includes an implied claim for TDIU as the Veteran has indicated inability to work due to service-connected disabilities. The Board agrees with the RO's determination in that regard, and has therefore included that issue as a proper subject for current appellate review.

The issues of entitlement to service connection for a bilateral hip disability, a lumbar spine disability, and erectile dysfunction, and entitlement to an increased initial rating for Reiter's syndrome and TDIU are REMANDED to the Agency of Original Jurisdiction.


FINDINGS OF FACT

1. The Veteran is diagnosed with PTSD that has been medically attributed to an in-service stressful incident.

2. The Veteran's pes planus was not noted at entry but was aggravated beyond its normal progression during active service. 

3. In November 2014, after the case was returned to the Board's custody, but prior to the promulgation of a decision in the appeal, the Board received written notification from the Veteran expressly requesting a withdrawal of the issue of entitlement to an increased rating for chronic iritis. 


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a psychiatric disorder, to include PTSD due to personal assault, have been met. 38 U.S.C.A. §§ 1110, 5107 (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2014). 

2. The criteria for entitlement to service connection for pes planus have been met. 38 U.S.C.A. §§ 1110, 5107 (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.102, 3.303, 3.306 (2014). 

3. The criteria for withdrawal of the issue of entitlement to an increased rating for chronic iritis have been met. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. § 20.204 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection for PTSD

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. § 3.303(a) (2014). To establish service connection for a disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. §§ 3.304(f)(5), 4.125 (2014); Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV).

The Veteran contends that service connection is warranted for a psychiatric disability, to include PTSD and depressive disorder, based on an in-service incident. The Veteran asserts that he was sexually assaulted while on active duty. He maintains that after the incident, he underwent profound behavioral changes that affected his ability to properly perform duties in service. He has been diagnosed with PTSD and major depressive disorder. 

If a PTSD claim is based on personal assault in service, evidence from sources other than the Veteran's records may corroborate the Veteran's account of the stressor incident. Examples of that evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. 38 C.F.R. § 3.304(f)(3) (2014).

Additionally, evidence of behavior changes following the claimed assault is relevant evidence that may be found in the mentioned sources. Examples of behavior changes that may constitute credible evidence of a stressor include, but are not necessarily limited to: a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. 38 C.F.R. § 3.304(f)(3) (2014).

The record shows that various VA treatment providers have assigned a diagnosis of PTSD to the Veteran. He has undergone both individual and group counseling for PTSD symptoms and manifestations, and on at least one occasion inpatient treatment.

The Veteran has identified several incidents during service which he identifies as stressors. Those incidents were summarized in an October 2007 response to a VA PTSD stressor questionnaire. They include an incident where he was sexually assaulted while confined in the stockade at Fort Polk, Louisiana for a three month period in May 1970. The Veteran stated that he was awakened one night by something being thrown over his head, and his clothing was removed. A group of male soldiers then proceeded to sexually assault him. The Veteran attempted to resist, but unsuccessfully. He stated that the perpetrators then threatened his life if he reported the incident, so he did not give a report but requested a unit transfer, which was denied. The Veteran has provided additional details consisting of his unit designation and rank at the time. He also described an incident in June 1969 when he and a friend were attacked in the process of leaving the Post Exchange store at Fort Polk and his friend was mortally wounded. There was also an incident in July 1969 on the grenade range where a fellow service member sustained serious injuries due to an exploding grenade. 

In addition to these specific incidents, the Veteran has indicated that generally he experienced significant stress in relation to continued racial tensions within the unit in which he served, and that there were racial riots on more than one occasion. He describes animosity and interpersonal conflict perpetrated by other serviceman against him. In an October 2007 statement, the Veteran indicates that the reason he went absent without leave was because he was threatened. He further alleges that there is proof in the claims file about the racial riots because he was cited for misconduct in July 1969 and a partial forfeiture of salary was imposed. In addition, the Veteran mentioned in connection with the PTSD stressor questionnaire, during the July 2005 DRO hearing the Veteran testified that his primary concern for safety and well-being in service was the level of racial tension that was directed towards certain individuals, and he was concerned that he would become subjected to that. He further stated that there was a racial riot and that afterwards he was singled out with other individuals and was told he would be placed in Fort Leavenworth prison, and that was one of the reasons that he was absent without leave for a period of time. 

The identified stressful incidents of the Veteran's claim have each been closely considered as to whether the available evidence provides sufficient objective verification. According to the personnel records, some events transpired by the Veteran as described. There is a March 1970 record of a special court-martial the Veteran received for having been AWOL for a period of more than six months, for which he was confined to hard labor for three months and to forfeit a portion of his pay for three months, the sentence later being suspended. From that documentation, there unfortunately is no record of any precipitating circumstances that led to the Veteran's decision to go AWOL, However, this would place the Veteran in the stockade at the time of the reported assault in May 1970. 

The Veteran has also provided lay statements in support of the claim. A statement from the Veteran's current wife, who has known him for approximately 30 years, attested to observing the Veteran's stress in events of daily life, and that he finally told her about the sexual trauma that occurred while in the Army. Several other lay affiants offered statements that they knew the Veteran before entering service, or met him afterwards, and attested to his anxious and disturbed mental state and associated symptomatology. The Veteran has also given a statement in response to an RO inquiry for substantiating evidence to the effect that after the incident, he began drinking alcohol excessively and lost respect for all authority. There is no evidence of record that directly contradicts this assertion.

In addition, while the Veteran's account of the sexual assault has varied significantly from being an observer of an assault on another person to actually being the victim of the assault, and a December 2012 examiner concluded in an April 2013 addendum report that there was no "hard evidence" to substantiate the Veteran's stressors, the fact remains that the same examiner noted in December 2012 that the Veteran provided a statement in October 2007 that described his sexual assault in detail with the stockades, that the Veteran received a diagnosis of severe PTSD in 2002. In April 2003, a PTSD assessment linked the PTSD to military service, and that given those indicators, it was the examiner's opinion that the Veteran's PTSD was at least as likely as not incurred or related to his military service. In addition, a November 2005 VA treatment record contains a diagnosis of chronic PTSD, noting the "transformation of his psychological condition occurred while in the military." An April 2008 VA psychologist diagnosed "PTSD, chronic, severe (MST, racial incidents in military)," and a VA psychology note from January 2012 provides Axis I diagnoses of "PTSD, Major Depressive Disorder, Recurrent, and Pain Disorder Associated with both Psychological Factors and a General Medical Condition" with "Trauma include MST, and Racial Incidents."

Moreover, the Veteran's attorney has submitted an October 2014 evaluation from a private psychiatrist who, after a two-hour evaluation of the Veteran and an examination of the available treatment records and lay statements, concluded that although there was no evidence to support a separate diagnosis of major depressive disorder, schizoaffective disorder, personality disorder, or any of the other diagnoses that had occasionally appeared in the record, it was quite clear from the treating providers at VA that the Veteran had been diagnosed with PTSD secondary to military sexual trauma and that the private psychiatrist concurred with those assessments. This examiner believed that there was no question that PTSD was secondary to military sexual trauma which occurred in 1970. The examiner stated that there was also no indication in the medical record that the Veteran was malingering, suffered from a factitious disorder, or was not a credible historian. There was also no evidence that he was manipulating the mental healthcare system or attempting to fabricate symptoms of mental illness. Both the examiner's interview and the medical record were found to be extremely consistent with respect to the description of the sexual assault and the development of PTSD as secondary to this traumatic event. The examiner believed that the medical record was extremely clear to that effect and that the lay statements strongly supported the profound behavioral changes which developed after the Veteran returned from active service.

The Board notes that the Veteran's service medical and personnel records are negative for contemporaneous documentary evidence of in-service psychiatric, behavioral, or disciplinary problems that were directly associated with the claimed assault. However, there is no evidence that directly disputes the Veteran's assertions that he sought a transfer following the event or that he began drinking alcohol excessively because of the incident. In addition, there is lay statement evidence that there were behavioral changes that were observed in the Veteran following his return from the service. Behavioral changes in a Veteran claimant is one form of evidence that can be used to corroborate the Veteran's account of the stressor incident if a PTSD claim is based on MST or personal assault in service, and the provisions do not require that the evidence of behavioral changes must only be contemporaneous to the alleged event. 

In summary, the Board finds that the lay statements noting behavioral changes in the Veteran, although not based on observations contemporaneous to the incident, are relevant evidence that supports the contention of sexual assault. Furthermore, the Veteran's contentions of sexual and physical assault have been corroborated numerous VA examiners' opinions that his symptoms of PTSD occurred immediately after service and have persisted since in-service assaults. Based on the foregoing, the Board finds that service connection is warranted for PTSD is warranted. The evidence of record shows that it is at least as likely as not that PTSD is the result of stressors during service. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Service Connection for Pes Planus

A preexisting injury or disease will be considered to have been aggravated by active service where there is an increase in disability during service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 C.F.R. § 3.306(a) (2014). 

The Veteran's attorney contends that the Veteran's preexisting pes planus underwent an increase in disability during service and that service connection for pes planus is therefore warranted. The Board first notes that pes planus was noted at the time of the Veteran's entry into service with the notation "Pes planus 2°" with rotation. He was accepted and enrolled for service following that examination. Consequently, in view of the fact that pes planus was noted upon the Veteran's entry into service, the presumption of soundness does not apply to pes planus, and the critical issue with respect to this claim is whether pes planus was aggravated beyond its natural progression as a result of service.

The service medical records show that after 14 months of service, the Veteran began to seek treatment for foot pain as evidenced by an August 1970 dispensary note that contains a diagnosis of "pes planus valgus grade III bilat." In October 1970, the Veteran was again seen for "painful and swollen feet," and by March 1971, the Veteran was assessed with "very marked pes planus [with] acute strain." As a result, he was placed on restriction from "crawling, stooping, running, jumping, prolonged standing, or marching over 10 minutes." In addition, a July 1971 clinical record strongly recommended that the Veteran be changed to a sedentary military occupational specialty as his complaints on the feet remained the same and he had a permanent profile.

At a December 2012 VA examination, and after a review of the record and examination of the Veteran, the examiner concluded that as a result of several evaluations in service, the Veteran's pes planus had been aggravated beyond its normal progression in service. The rationale for that conclusion was that the service medical records had proven that he was seen several times for pains in his feet and treated and given profiles. However, in an addendum statement from January 2013, the same examiner seemingly reversed the previous position, instead asserting that nothing in the service medical records indicated that the Veteran's pes planus was aggravated beyond the normal progression as he was once seen for swollen/painful feet in 1971 and given a physical profile. Therefore the Board is left with two opinions from the same examiner, one in favor of the claim and one against.

Turning first to the initial opinion in favor of the claim, the Board finds that it is based on a more accurate assessment of the evidence of record. More specifically, the Veteran was shown to have been treated for foot pain and pes planus on multiple occasions during service, and not only one occasion in 1971. Consequently, the Board finds that the opinion in favor of aggravation has more probative value since it is based on an accurate premise. In addition, since the opinion against the claim is based on an inaccurate premise, the conflicting opinions from the same examiner demonstrate that there is not clear and unmistakable evidence that pes planus was not aggravated during service.

The Board further notes that the opinion in favor of aggravation is further supported by the fact that the Veteran's pes planus was described as second degree pes planus at entrance to service and as "pes planus valgus grade III by an examiner in August 1970, and as very marked by an examiner in March 1971. A reasonable comparison between the characterization of the pes planus as second degree with rotation at the time of entry into service with grade III pes planus valgus in August 1970 is that the Veteran's pes planus increased in disability during that time, and that based on the minimal, if any, probative value the Board attaches to the second opinion provided by the December 2012 examiner, there is an inadequate showing that the increase in disability is due to the natural progress of the disease. 

Consequently, based on all of the foregoing, the Board will resolve reasonable doubt in favor of the Veteran, and conclude that service connection for the aggravation of bilateral pes planus is warranted. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Withdrawal

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2014). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. Withdrawal may be made by the appellant or the authorized representative. 38 C.F.R. § 20.204 (2014). 

The record indicates that in November 2014, the Board received correspondence from the appellant, also dated in November 2014, in which he expressly requested to withdraw his appeal for an increased rating for chronic iritis. 

The Board deems the above correspondence, dated and received in November 2014, as being sufficient in its language and expressed intent to constitute a request from the appellant for a withdrawal of the issue. Therefore, there remain no allegations of errors of fact or law for appellate consideration as to this matter. Accordingly, the Board does not have jurisdiction to review the appeal as to that claim and it is dismissed. 38 C.F.R. § 20.204 (2014). 


ORDER

Entitlement to service connection for PTSD is granted. 

Entitlement to service connection for pes planus is granted.

The issue of entitlement to an increased rating for chronic iritis is dismissed.


REMAND

With respect to the remaining issues of entitlement to service connection for a bilateral hip disability, a lumbar spine disability, and erectile dysfunction, and entitlement to an increased rating for Reiter's syndrome and TDIU, the Board finds that all of these matters must be remanded.

With respect to the service connection claims, the claims for service connection for a bilateral hip disability and a lumbar spine disability were at least based in part on the theory that the Veteran had a bilateral hip disability and lumbar spine disability that were caused or aggravated by pes planus. Now that the Board has established service connection for pes planus, the Board finds that further evidentiary development is needed, to include an examination and opinion as to whether the any current disabilities of the hips or low back are related to service-connected pes planus. While the Board is mindful of the fact that the December 2012 VA pes planus examiner opined in a January 2013 addendum opinion that there was no causal relationship between the Veteran's pes planus and bilateral hip and low back disabilities, that examiner did not opine with respect to the issue of aggravation and did not provide an adequate rationale to support the opinion provided. The Board is also concerned about the inconsistencies that have arisen with respect to the opinions provided by that examiner concerning the Veteran's pes planus. Consequently, the Board finds that the Veteran should be provided with a new examination and opinion by an examiner other than the examiner who conducted the December 2014 pes planus examination as to whether any current bilateral hip disorder and low back disabilities were caused or aggravated by service-connected pes planus or Reiter's syndrome.

As for the claim for service connection for erectile dysfunction, claimed as secondary to medications taken for service-connected Reiter's syndrome, the Board agrees with the observations of the Veteran's attorney that the opinion of record did not consider whether there was any relationship between the Veteran's erectile dysfunction and non-steroidal anti-inflammatory drugs (NSAIDs) and cyclobenzaprine (Flexeril). An opinion should also be provided with respect to whether there is any relationship between the Veteran's PTSD and erectile dysfunction. Consequently, the Board finds that the Veteran should be provided with a new examination and opinion as to whether erectile dysfunction was caused or aggravated by the any NSAIDs and cyclobenzaprine (Flexeril) that he was using to treat Reiter's syndrome or by the newly service-connected PTSD.

Finally, with respect to the remaining claims for an increased rating for Reiter's syndrome and TDIU, based on the fact that the Board's accompanying decision has granted service connection for pes planus, which could in turn lead to the granting of service connection for disability of the hips or the low back, the Board finds that the appropriate rating for Reiter's syndrome could be impacted by the ratings assigned to additional joints of the body. As a result, the Board will defer any decision with respect to the increased rating claim pending the completion of the development requested in this remand. In that the ratings assigned for these disorders and the Veteran's newly service-connected PTSD and pes planus could impact the claim for TDIU, the Board will similarly defer any decision with respect to that claim. Harris v. Derwinski, 1 Vet. App. 180 (1991). 

Accordingly, the case is REMANDED for the following action:

1 Schedule the Veteran for a VA orthopedic examination, with a medical doctor examiner who has not previously examined him, to ascertain the etiology of any bilateral hip and lumbar spine disabilities. The examiner must review the claims file and should note that review in the report. All indicated tests and studies should be performed, and all findings should be set forth in detail. The examiner should provide the following opinions:

(a) Diagnose all lumbar spine disabilities.

(b) Is it at least as likely as not (50 percent probability or greater) that any lumbar spine disability was caused by service-connected pes planus?

(c) Is it at least as likely as not (50 percent probability or greater) that any lumbar spine disability was caused by service-connected Reiter's syndrome?

(c) Is it at least as likely as not (50 percent probability or greater) that any lumbar spine disability has been aggravated (permanently increased in severity beyond the natural progress of the disorder) by service-connected pes planus?

(c) Is it at least as likely as not (50 percent probability or greater) that any lumbar spine disability has been aggravated (permanently increased in severity beyond the natural progress of the disorder) by service-connected Reiter's syndrome?

(e) Diagnose all hip disabilities.

(f) Is it at least as likely as not (50 percent probability or greater) that any hip disability was caused by service-connected pes planus?

(g) Is it at least as likely as not (50 percent probability or greater) that any hip disability was caused by service-connected Reiter's syndrome?

(h) Is it at least as likely as not (50 percent probability or greater) that any hip disability has been aggravated (permanently increased in severity beyond the natural progress of the disorder) by service-connected pes planus?

(i) Is it at least as likely as not (50 percent probability or greater) that any hip disability has been aggravated (permanently increased in severity beyond the natural progress of the disorder) by service-connected Reiter's syndrome?

(j) Is it at least as likely as not that the Veteran is unable to secure or follow substantially gainful occupation due to the service-connected disabiliteis (PTSD, pes planus, Reiter's syndrome, and bilateral uveitis/iritis)?

2. Schedule the Veteran for an examination to determine the etiology of erectile dysfunction. The examiner must review the claims file and should note that review in the report. All indicated tests and studies should be performed, and all findings should be set forth in detail. The examiner is requested to provide a complete rationale for all conclusions reached. The examiner should provide the following opinions:

(a) Is it at least as likely as not (50 percent probability or greater) that erectile dysfunction is related to urethral discharge in service or any other aspect of service?

(b) Is it at least as likely as not (50 percent probability or greater) that erectile dysfunction was caused by nonsteroidal anti-inflammatory drugs (NSAIDs) or cyclobenzaprine (Flexeril) used to treat service-connected Reiter's syndrome. 

(c) Is it at least as likely as not (50 percent probability or greater) that erectile dysfunction has been aggravated (permanently increased in severity beyond the natural progress of the disorder) by nonsteroidal anti-inflammatory drugs (NSAIDs) or cyclobenzaprine (Flexeril) used to treat service-connected Reiter's syndrome. 

(d) Is it at least as likely as not (50 percent probability or greater) that erectile dysfunction was caused by service-connected PTSD. 

(e) Is it at least as likely as not (50 percent probability or greater) that erectile dysfunction has been aggravated (permanently increased in severity beyond the natural progress of the disorder) by service-connected PTSD. 

3. Then, readjudicate the claims. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the applicable time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs