http://www.va.gov/vetapp16/Files3/1626425.txt

Citation Nr: 1626425 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 12-09 439 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas

THE ISSUE

Entitlement to service connection for left knee disability, to include degenerative joint disease (DJD) of the left knee.

REPRESENTATION

Appellant represented by: Texas Veterans Commission

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

N. Rippel, Counsel

INTRODUCTION

The Veteran served on active duty in the U.S. Air Force from August 1967 to November 1971.

This case is before the Board of Veterans' Appeals (Board) on appeal from a September 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. In that rating decision, the RO denied the Veteran's petition to reopen his previously denied claim of service connection for left knee disability because new and material evidence to reopen the previously denied claim had not been received. The Veteran disagreed with the decision, and in a statement of the case (SOC) issued in February 2012 the RO found that the claim remained denied. The Veteran thereafter perfected his appeal with the submission of a timely substantive appeal. 

In October 2015, the Board issued a decision reopening the claim of service connection for left knee disability, previously characterized as left knee chondromalacia, and remanding this matter to the Agency of Original Jurisdiction (AOJ) for additional development. As sufficient efforts were made to obtain the noted medical records and the requested medical opinion was obtained, the Board finds the directives have been substantially complied with, and the matter again is before the Board. Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Veteran's record before the VA consists of an electronic record located in Veterans Benefits Management System (VBMS)/Virtual VA.

FINDING OF FACT

A left disability to include DJD is not shown to be causally or etiologically related to an in-service event, injury or disease, or to have manifested in service or the first post-service year.

CONCLUSION OF LAW

The criteria for service connection of a left knee disability, to include DJD, are not met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Veterans Claims Assistance Act of 2000 (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions with respect to the Veteran's claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the Veteran and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim, the evidence VA will obtain on the Veteran's behalf, and the evidence the Veteran is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). VA issued a VCAA compliant letter in August 2009, prior to the initial unfavorable adjudication in September 2009. 

The duty to assist includes assisting the claimant in the procurement of relevant records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). The RO associated the Veteran's service and VA treatment records with the claims file, including VA treatment records from the Houston VA Medical Center from 2006 forward. All identified private treatment records have been associated with the claims file. No other relevant records have been identified and are outstanding. In December 2015, the AOJ asked the Veteran to provide additional records or information on the treatment he identified at his hearing. He did not provide a response. As such, the Board finds VA has satisfied its duty to assist with the procurement of relevant records. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim, as defined by law. See 38 C.F.R. § 3.159(c)(4). In this case, VA obtained a medical examination and opinion in December 2011 and January 2016. In concert, the examinations are adequate because the examiners considered and addressed the Veteran's contentions, reviewed the claims file, and provided sufficient supporting rationale for the opinions. Based on the foregoing, the Board finds the examination reports to be a thorough, complete, and a sufficient basis upon which to reach a decision on the Veteran's claim for service connection. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-05 (2008); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Since VA has obtained all relevant identified records and obtained an adequate medical opinion, its duty to assist in this case is satisfied.

II. Service Connection

Service connection will be granted if it is shown that the Veteran suffers from a disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or disease contracted in the line of duty, during active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Disorders diagnosed after discharge will still be service connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d); see also Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). 

In order to establish service connection on a direct basis, the record must contain competent evidence of: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). In the absence of proof of a present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

Some chronic diseases may be presumed to have been incurred in service, if they become manifest to a degree of ten percent or more within the applicable presumptive period. 38 U.S.C.A. §§ 1101(3), 1112(a); 38 C.F.R. §§ 3.307(a), 3.309(a). For those listed chronic conditions, a showing of continuity of symptoms affords an alternative route to service connection. 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F. 3d 1331 (Fed. Cir. 2013). DJD is among the listed conditions, subject to a one year presumptive period. 

Finally, a disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310. 

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet.App. 428, 435 (2011). A layperson is generally not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997). See also Bostain v. West, 11 Vet. App. 124, 127 (1998).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.

The Veteran asserts that his currently diagnosed left knee disability, DJD of the left knee, began in service as a consequence of heavy lifting associated with his duties as a munitions maintenance specialist/explosives operator, combined with excessive walking while he was stationed in Greece, where there were no vehicles available to him. As will be explained in the body of this decision, although there is both the existence of a present disability and an in-service incurrence, the claim fails because the preponderance of the evidence shows there is no causal relationship between the present disability and the disease or injury incurred or aggravated during service.

Service treatment records show no left knee disability at entrance to service but demonstrate that the Veteran was seen in service in September and November 1969 for left knee pain. When he presented with complaints of left knee pain in September 1969, the Veteran reported he initially injured his left knee three years earlier playing football. The injury was not extensive and he had no problems for a long time with the left knee. The current knee problems had started about two weeks prior to this September 1969 treatment when he was playing basketball. He was evaluated and left knee chondromalacia was diagnosed. He was offered left patella shaving in October 1969 but it does not appear this was accomplished. He was placed on a profile at that time for his left knee but the ratings were all noted to be 1's. Although the narrative summary of the medical evaluation indicates that the condition existed prior to service, the final assessment of the condition was that it was incurred in the line of duty and did not exist prior to service. The Veteran was discharged as a result of a physical evaluation board for other unrelated medical problems in November 1971. 

VA treatment records dated June 2006 through September 2007 and treatment records from C.H., M.D., dated in April 2007 show that the Veteran underwent left knee replacement in June 2005, after a trauma on the job. They also showed that he had some residual limitation of function.

Records of private treatment dated from 2004 through 2006 relate to the Veteran's July 2004 on-the-job left knee injury and left total knee replacement; VA treatment records dated from June 2007 to September 2012 show ongoing complaints and treatment. 
Consistent with the medical records, the Veteran testified before the undersigned that he was offered surgery to have the knee shaved when he began to have knee problems in service. He testified that he was afraid of the surgery because he was young, so he declined. He compensated for his knee impairment as best he could and used a fork lift for heavy lifting when possible. 

The Veteran also testified that following service, he and his first wife, who is now deceased, treated his knee at home until she died in 2000. He stated he took over the counter pills for pain. Additionally, his first wife would rub the knee down and apply a cool ice substance which worked well on the left knee and allowed him to continue his work. Parenthetically, the record reflects that the Veteran married in 1975, four years after separation from service.

As noted in the Board's remand decision, the record also contains a November 2011 VA examination report reflecting the examiner's opinion that the present left knee disability is not likely due to service. The diagnoses included chondromalacia patella in 1969 and then osteoarthritis in 2004. The examiner opined that the left knee condition was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness. The rationale was that the Veteran was seen for and diagnosed with chondromalacia left knee in October 1969 in service and had therapy, was placed back on full duty without restrictions and served until November 1971 without further complaints related to the knee. The examiner also noted the first complaint or treatment for the knee post service was in July 2004 after a workers compensation injury. He noted that there was no evidence of a chronic on going condition associated with the Veteran's military service and observed that the first complaint was 35 years after the in-service complaints. 

The Board remanded this matter in part to obtain a medical examination and opinion as to the etiology of the current left knee disability. The Disability Benefits Questionnaire (DBQ) report dated in January 2016 reflects that the Veteran's records were reviewed and the Veteran was interviewed by the examining physician. The examiner opined that the current left knee disability was less likely than not (less than 50% probability) incurred in or caused by the claimed in-service injury, event or illness. The rationale was as follows:

The development of degenerative joint disease or osteoarthritis in knees is less likely due his left knee condition - chondromalacia in service. He seems he had injury to knee at work leading to his left knee surgery. In addition he had right knee djd too. The onset of djd knees is at least as likely due normal progression of aging and aggravated by strain in knees due his overweight (302 lbs in 2004 ). No hx of any chronic knee condition was documented after he got separated either. His current condition seems more marked by his back condition and R. ankle fracture as documented in records. 

To the extent that the Veteran alleges that arthritis was actually manifested in service or within the first post-service year, the preponderance of the evidence is against such a claim. The record as discussed above clearly does not show arthritis until many years following service. As such, service connection on presumptive basis is denied. 

Additionally, the preponderance of the evidence is against a finding that the current left knee disability, DJD or osteoarthritis, is related to service. The 2016 VA opinion, which is wholly against the claim, was based on review of the history including service treatment records; it addressed all of the critical medical issues in this claim regarding nexus and is entitled to significant probative weight. Nieves-Rodriguez, 22 Vet. App. at 302-05; Barr, 21 Vet. App. at 312. Moreover, it is uncontroverted. The Board finds it highly probative and persuasive.

As noted, VA treatment records dated through the present reflect continued treatment for left knee complaints and also show bilateral DJD of the knees as pointed out by the VA examining physician in 2016. The records contain no opinions linking the Veteran's current left knee disability of DJD to his active duty service generally or any of the aforementioned service-related knee treatment specifically. In fact, the VA examiner specifically opined against such a relationship. Based on the competent and credible lay and medical evidence of record, the Board finds that the preponderance of the evidence is against a finding that the Veteran's left knee disability, left knee DJD, is causally related to his active duty service. As such, the third element has not been met, and direct service connection is not warranted.

In making this decision, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (noting that a Veteran is competent to report on that of which he or she has personal knowledge). However, his opinion as to the etiology of his current left knee disability is outweighed by the medical opinion evidence, particularly the 2016 VA opinion. In this regard, the examiner considered his reported history in arriving at her opinion, as well as the contemporaneous service treatment records. The Board does, in fact, adopt the 2016 VA physician's opinion on which it bases its determination that service connection for left knee disability is not warranted. 

Although the Veteran has established a current disability and an in-service injury, event or disease, the preponderance of the evidence is against a finding that the Veteran's left knee disability, DJD of the left knee, is causally related to his service. Since the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Ortiz, 274 F.3d at 1364; Gilbert, 1 Vet. App. at 55-57; 38 C.F.R. § 3.102. For these reasons, the claim is denied.

ORDER

Entitlement to service connection for left knee disability is denied.

____________________________________________
BETHANY L. BUCK
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs