Citation Nr: 1730409 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 13-13 035 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to a compensable rating for a skin rash prior to December 17, 2015, and in excess of 10 percent thereafter.

2. Entitlement to service connection for a right knee disability.

3. Entitlement to service connection for a left knee disability.


ATTORNEY FOR THE BOARD

E. Mine, Associate Counsel







INTRODUCTION

The Veteran served on active duty with the U.S. Army from November 1974 to November 1994.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a January 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia.

In November 2015 the Board remanded the above issues for additional development. Subsequently, in a January 2016 rating decision, the RO granted the Veteran a 10 percent disability rating for his skin condition effective December 17, 2015.

The Board again remanded the above issues for reconsideration in June 2016. The appeal is once again before the Board for consideration.


FINDINGS OF FACT

1. Prior to December 17, 2015, the Veteran's skin rash affected less than 5 percent of the entire body or less than 5 percent of exposed areas, and required no more than topical therapy during the past 12-month period.

2. Since December 17, 2015, the Veteran's skin rash affected at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas, or required intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs for a total duration of less than six weeks during the past 12-month period. 

3. The preponderance of the evidence is against a finding that the Veteran's current right knee disability is etiologically related to a disease, injury, or event which occurred in service.

4. The preponderance of the evidence is against a finding that the Veteran's current left knee disability is etiologically related to a disease, injury, or event which occurred in service.


CONCLUSIONS OF LAW

1. Prior to December 17, 2015, the criteria for a compensable rating for a skin rash have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 4.7, 4.21, 4.118, Diagnostic Codes 7806 (2016).

2. Since December 17, 2015, the criteria for a rating in excess of 10 percent for a skin rash have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 4.7, 4.21, 4.118, Diagnostic Codes 7806 (2016).

3. The criteria for service connection for a right knee disability have not been met. 38 U.S.C.A. §§ 1101, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).

4. The criteria for service connection for a left knee disability have not been met. 38 U.S.C.A. §§ 1101, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Stegall Concerns

In June 2016, the Board remanded the Veteran's claim for additional evidentiary development. The Board instructed the AOJ to contact the Veteran and, with his assistance, obtain private medical records from Eagle Landing Family Practice from September 2009, Hands On Physical Therapy, and, if relevant to the claims at issue, a private gastroenterology clinic in Stockton, Georgia. After completing said development, the RO was directed to obtain an addendum opinion regarding the Veteran's service-connected skin rash, to include a description and dosing information for the medications used by the Veteran for said condition.

In June 2016, the RO sent a letter to the Veteran that included VA Form 21-4142 and VA Form 21-4142a and requested that he complete and return the forms so that the records identified by the Board could be obtained on his behalf. The RO noted that the Veteran could also provide the records himself. There is, however, no indication in the record that the Veteran responded to the letter, or completed and returned the forms provided, or provided the medical records himself. 

A VA addendum opinion regarding the Veteran's service-connected skin condition that addressed issues raised by the Board's remand was provided in July 2016. 

Thus, the Board's prior remand instructions have been substantially complied with. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

II. Duties to Notify and Assist

VA's duties to notify and assist claimants in substantiating a claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 and 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a). 

VA's duty to notify was satisfied by letters dated in November 2009 and October 2010. See 38 U.S.C.A. §§ 5102, 5103, 5103A; 38 C.F.R. § 3.159; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

VA has fulfilled its duty to assist in obtaining identified and available evidence needed to substantiate the claim. Service treatment records, identified post-service treatment records, and lay statements have been associated with the record. No other relevant records have been identified that are outstanding. As such, the Board finds VA has satisfied its duty to assist with the procurement of relevant records. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim, as defined by law. See 38 C.F.R. § 3.159(c)(4). During the appeal period, the Veteran was afforded VA examinations in March 1995, March 2010, and December 2015. An addendum opinion was provided in July 2016. The Board has carefully reviewed the VA examinations of record and finds that the examinations, along with the other evidence of record, are adequate for rating purposes. Thus, with respect to the Veteran's claim, there is no additional evidence which needs to be obtained. 

III. Increased Rating for a Skin Rash

A disability rating is determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate diagnostic codes identify the various disabilities. 38
U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. 
§ 4.7. 

Amendment was made to certain criteria for rating the skin, effective October 2008. See 73 Fed. Reg. 54,708 (2008) (codified at 38 C.F.R. § 4.118, DCs 7800 to 7805 (2014)). However, in this case, the Veteran's skin disability has been rated under Diagnostic Code 7806 since initial service-connection in December 1994. As such, the Board will not consider these regulations.

Under DC 7806, less than 5 percent of the entire body or less than 5 percent of exposed areas affected, and no more than topical therapy required during the past 12-month period warrants a noncompensable rating. A 10 percent rating is warranted if at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas are affected, or; if intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs were required for a total duration of less than six weeks during the past 12-month period. A 30 percent rating is warranted if 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas are affected, or; if systemic therapy such as corticosteroids or other immunosuppressive drugs were required for a total duration of six weeks or more, but not constantly, during the past 12-month period. A 60 percent rating is warranted if more than 40 percent of the entire body or more than 40 percent of exposed areas are affected, or; if constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs were required during the past 12-month period. 38 C.F.R. § 4.118, DC 7806.

 For the period prior to December 17, 2015.

After considering the totality of the evidence currently of record the Board finds that the Veteran's symptomatology more nearly approximated symptoms associated with a noncompensable rating for the period prior to December 17, 2015. 

In December 2007, October 2008, April 2009, and September 2009 private treatment records, a review of symptoms relevant to the Veteran's skin indicated that no rash, ulcers, or lesions were present. 

The Veteran was afforded a VA examination for his skin condition in March 2010. The Veteran reported that the condition had existed since 1980. The Veteran reported that the condition involved areas that were exposed to the sun, including the feet, upper arms, and upper back; however, it did not include the face, hands, neck, or head. The Veteran described continuing episodes of extensive constant daily itching, marked lesions and disfigurement, exudation both feet, ulcer formation on both feet, itching on his upper arms, upper back, both feet, and neck areas, and shedding and crusting on both feet. He described the symptoms as constant. He reported that he had used a topical corticosteroid bi-monthly since 2005, and did not experience any overall functional impairment due to the condition. The examiner reported that on examination, skin rash was present on the Veteran's back, hands, and feet. It was described as having induration of more than six square inches, hyperpigmentation of more than six square inches, and abnormal texture of more than six square inches. There was no ulceration, exfoliation, crusting, disfigurement, tissue loss, inflexibility, hypopigmentation, or limitation of motion. The examiner noted that skin lesion was 0% in the exposed area of the skin lesion, and coverage relative to the whole body was 1%. The examiner opined that the skin lesions were not associated with systemic disease, and did not manifest in connection with a nervous condition. 

In his April 2013 VA Form 9, the Veteran asserted that his skin condition has worsened in both extent and severity since it was service-connected in 1994.

The Board notes that in September 2009, the Veteran was prescribed doxycycline for 10 days. See September 2009 private treatment record. However, in a July 2016 addendum VA opinion, a VA examiner opined that, based on a review of the Veteran's available medical files, there was no record of a topical or systemic steroid being prescribed for treatment of his service-connected skin condition between the period dating from December 2007 through the present. The examiner reported that the frequency of steroid use, topical or systemic, was not of record from December 2007 through the present. According to the examiner's review of the claims file, there was no indication that the doxycycline hyclate prescribed in September 2009 was prescribed for the service connected skin condition. The examiner notes the September 2009 private treatment record noted a diagnosis of acute bronchitis and a treatment plan that included the antibiotic doxycycline for 10 days, but was silent for treatment of a skin condition. The examiner also noted that a September 2009 VA treatment record made reference to the September 2009 doxycycline prescription and bronchitis but was also silent for treatment of a skin condition.

The Board has considered the Veteran's reports in the March 2010 VA examination regarding the severity and extent of his service-connected skin rash, which the Veteran is competent and credible. See Layno v. Brown, 6 Vet. App. 465, 469 (1994); 38 C.F.R. § 3.159(a)(2). However, even considering his report that he used a topical corticosteroid bi-monthly since 2005, there is no medical evidence in the record indicating that the Veteran was prescribed such a treatment. Moreover, in order to meet the requirements of a 10 percent or greater rating, the use of a corticosteroid must be "systemic." As the U.S. Court of Appeals for the Federal Circuit noted in a recent decision, "systemic therapy means 'treatment pertaining to or affecting the body as a whole,' whereas topical therapy means 'treatment pertaining to a particular surface area, as a topical antiinfective applied to a certain area of the skin and affecting only the area to which it is applied." See Johnson v. Shulkin, 2017 U.S. App. LEXIS 12601 (Fed. Cir. July 14, 2017). Moreover, while the use of a topical corticosteroid may rise to the level of "systematic therapy" if administered on a large enough scale, id., given that the VA examiner found that the Veteran's skin condition covered 1% of his total body area and was not associated with a systemic disease, there is no indication in the medical evidence of record that the Veteran's reported use rose to such a level.

The Board has considered the application of other diagnostic codes in order to afford the Veteran a higher rating but does not find any raised by the medical evidence. See Butts v. Brown, 5 Vet. App. 532, 538 (1993).

As the assigned noncompensable evaluation reflects the actual degree of impairment for the Veteran's skin rash for the whole of the period prior to December 17, 2015, there is no basis for staged ratings for this claim. 

In sum, the Board finds the preponderance of the evidence is against the claim for a compensable for the service-connected skin condition prior to December 17, 2015. Thus, the benefit of the doubt doctrine is not for application. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001). The appeal must therefore be denied.

 For the period since December 17, 2015.

After considering the totality of the evidence currently of record the Board finds that the Veteran's symptomatology more nearly approximate symptoms associated with a 10 percent rating for the period since December 17, 2015. 

The Veteran was afforded a VA examination for his skin condition in December 17, 2015. The examiner noted the Veteran had a previous diagnosis of eczema. The Veteran reported the onset of dry skin in the 1970s while in service. He reported that his current symptoms included constant dryness and intermittent itchiness and pain at dry spots. The examiner found that the Veteran's skin condition did not cause scarring or disfigurement of the head, face, or neck. The Veteran did not have any benign or malignant skin neoplasms, and did not have any systemic manifestations due to his skin condition. The examiner reported that the Veteran was treated with a systemic corticosteroid pill for a total duration of less than six weeks in the past 12 months, and was treated with a topical corticosteroid cream on a constant/near-constant basis in the past 12 months. The Veteran had neither debilitating nor non-debilitating episodes of urticaria, primary cutaneous vasculitis, erythema multiforme, or toxic epidermal necrolysis in the past 12 months. The examiner reported that the eczema covered 5% to less than 20% of the Veteran's total body area, located on his legs. There was no indication that the Veteran's skin condition affected his head, face, or neck. The examiner opined that the Veteran's skin condition had no impact on his ability to work.

The Board recognizes that the December 2015 VA examiner noted that the Veteran was treated with a topical corticosteroid cream on a constant/near-constant basis in the past 12 months. However, given that the examiner reported that the Veteran's skin condition covered 5% to less than 20% of his total body area, the Board finds that there is no evidence the that use of the topical corticosteroid cream rose to the level of systemic treatment. See Johnson v. Shulkin, 2017 U.S. App. LEXIS 12601 (Fed. Cir. July 14, 2017).

The Board has considered the application of other diagnostic codes in order to afford the Veteran a higher rating but does not find any raised by the medical evidence. See Butts v. Brown, 5 Vet. App. 532, 538 (1993).

As the assigned 10 percent evaluation reflects the actual degree of impairment for the entire period since December 17, 2015, there is no basis for staged ratings for this claim. 

In sum, the Board finds the preponderance of the evidence is against the claim for a rating in excess of 10 percent for the service-connected skin condition since December 17, 2015. Thus, the benefit of the doubt doctrine is not for application. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001). The appeal must therefore be denied.


IV. Service Connection for Bilateral Knee Disability

Entitlement to VA compensation may be granted for disability resulting from disease or injury incurred in or aggravated by active duty. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. 

To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may be granted on a presumptive basis for certain chronic diseases, including arthritis and degenerative joint disease, if they are shown to be manifest to a degree of 10 percent or more within one year following the Veteran's separation from active military service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2016).

If a disease listed in 38 C.F.R. § 3.309(a) is shown to be chronic in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. Id. However, if chronicity in service is not established or where the diagnosis of chronicity may be legitimately questioned, a showing of continuity of symptoms after discharge is required to support the claim. Id. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. Id. A claimant "can benefit from continuity of symptomatology to establish service connection in the ultimate sense, but only if [the] chronic disease is one listed in § 3.309(a)." Walker v. Shinseki, 708 F.3d 1331, 1337 (Fed. Cir. 2013).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b).

The Veteran is seeking service connection for a bilateral knee disability. The Veteran asserts his active duty service resulted in his currently diagnosed bilateral degenerative knee arthritis.

With respect to the first Shedden element, the Veteran has a current diagnosis of degenerative arthritis of the bilateral knees. See September 2009 VA examination report; December 2015 VA examination report. 

Turning to the second Shedden element, there is no evidence of an in-service incurrence or aggravation of any disease or injury to the Veteran's bilateral knees. 

The Veteran's lower extremities were evaluated as normal in his November 1974 enlistment examination, medical examinations conducted in June 1983, September 1989, August 1990, and his August 1994 separation examination. See Service treatment records dated in June 1983, September 1989, August 1990, and August 1994. In a November 1974 report of medical history provided at enlistment, the Veteran reported that he did not know if he had ever had arthritis, but had not had a "trick" or locked knee. See November 1974 service treatment record. The Veteran reported that he had never had arthritis or a "trick" or locked knee in an August 1990 report of medical history, as well as a report of medical history conducted at separation in July 1994. See Service treatment records dated in August 1990 and July 1994. 

The Board notes that in a Standard Form 507, submitted along with a July 1994 medical history report, the Veteran reported that he got cramps around his knees and calves. However, as explained by the December 2015 VA examiner, there was no diagnosis provided and bilateral knee x-rays were normal at that time. See December 2015 VA examination report. Moreover, the Veteran did not complain of an injury, merely cramping around the knees.

Next, considering the third Shedden element, the weight of the evidence is against a finding that the Veteran's current bilateral knee disability is etiologically related to his active duty service.

In a March 1995 VA examination, the Veteran reported that if he sat or stood in a fixed position his knees began to ache, but reported no specific injury. The examiner noted no instability, but found mild crepitus bilaterally, with more on the left. He had normal flexion. The examiner opined that the Veteran may have had early degenerative changes in both knees. The Board finds that the physician's opinion is speculative in nature, and it is therefore afforded little probative weight. See Bostain v. West, 11 Vet. App. 124, 127-28 (1998); McLendon v. Nicholson, 20 Vet. App. 79, 85 (2006). Moreover, x-rays performed at the time did not confirm a diagnosis of arthritis, and instead showed joint spaces were well maintained with no other osseous or soft tissue abnormalities identified.

In a September 2009 VA treatment record the Veteran reported occasional pain in his knees bilaterally. He reported that the pain had started while he was in service. He reported that the pain was worse with prolonged standing, kneeling and working in the yard. The Veteran denied swollen, painful joints. A subsequent x-ray of the Veteran's knees showed mild arthritis changes bilaterally.

In an October 2009 VA treatment record, during a physical therapy consult, the Veteran reported that he had knee pain for 15 years.

The Veteran was afforded a VA examination for his knees in December 2015. The examiner diagnosed degenerative arthritis bilaterally. The Veteran reported the onset of knee pain in the 1980s, while he was in service. He described his symptoms at the time as knee pain when kneeling or after standing upon sitting for 10 minutes or more. The Veteran reported that he did not have flare-ups, or any functional loss or impairment, including after repeated use over time. The Veteran's knees had normal range of motion bilaterally, with no pain noted. There was no pain on weight bearing and no evidence of localized tenderness or pain on palpation. There was evidence of crepitus bilaterally. The Veteran was able to perform repetitive use testing with no additional loss of range of motion after three repetitions. The Veteran was examined immediately after repetitive use over time, and no pain, weakness, fatigability, or incoordination significantly limited the functional ability of the Veteran's knees bilaterally. Muscle strength testing was normal bilaterally, with no atrophy noted. Stability testing was normal bilaterally. No additional conditions were noted. Imaging tests confirmed the presence of arthritis bilaterally. The examiner found that the Veteran's diagnosed bilateral knee conditions produced no functional impairment. After the examination and a review of the claims file, the examiner opined that the Veteran's claimed condition was less likely than not (less than 50% probability) incurred in or caused by the claimed in-service injury, event or illness. The examiner explained that the Veteran's service treatment records were silent for trauma or injury to his knees. The examiner also noted that the Veteran's November 1974 enlistment examination; a May 1984 health records audit; and periodic medical exams dated in June 1983, September 1989, and August 1990 were silent for degenerative changes of the knees. The examiner observed that the Veteran reported cramps around his knees on Standard Form 507, but noted there was no service record of a diagnosis, treatment, or management of knee problems. The examiner further noted that the Veteran's August 1994 retirement examination was silent for degenerative changes and documented a normal exam of the lower extremities. Further, the examiner explained that while a March 1995 physical examination made reference to possible degenerative changes of the knees, there was no diagnosis provided and bilateral knee x-rays were normal at that time. The also noted that an October 2008 private treatment record was silent for degenerative arthritis of knee. The examiner noted that in a September 2009 VA treatment record, a knee x-ray report showed early degenerative changes of both knees of mild severity. The examiner opined that such a finding was consistent with age. The examiner further indicated that an October 2009 VA physical therapy visit note for bilateral knee pain made reference to minimal degenerative changes found in the September 2009 x-ray. Finally, the examiner opined that it was less likely as not that the degenerative changes noted in October 2009 and March 1995 had onset in service.

The Board acknowledges the Veteran's contentions that his bilateral knee disability is related to his in-service duties. However, as a layperson, his statements are not competent evidence regarding the etiology of the claimed conditions. See Barr, 21 Vet. App. at 307 (noting that lay testimony is competent to establish observable symptomatology but not competent to establish medical etiology or render medical opinions). And while the Veteran is competent to report symptoms capable of lay observation, he has not been shown to be competent to render an opinion as to the etiology of his bilateral knee condition, as such an opinion requires medical expertise which he is not shown to possess. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed.Cir.2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). Additionally, as noted above, the Veteran routinely denied any recurring or chronic pain involving his bilateral knees during active duty service. 

The Veteran was not diagnosed with arthritis in service or to a compensable degree within a year of discharge from service, so presumptive service connection is not warranted. However, as arthritis is a chronic disease under 38 C.F.R. § 3.309, continuity of symptomatology may be considered with this claim. In March 1995 the Veteran complained that his knees began to ache if he sat or stood in a fixed position. There are no subsequent complaints of pain or any other symptomatology until September 2009. Therefore, the record does not include evidence of continuity of symptomatology, and this alternative method of establishing a nexus between his current bilateral knee disability and service is not supported by the evidence.

The Veteran was provided with VA examinations by two separate examiners during the period on appeal. As explained above, the Board finds the March 1995 VA examiner's opinion speculative in nature. The December 2015 examiner specifically found that it was less likely than not that the Veteran's bilateral knee disability was etiologically related to his service and provided a detailed rationale to explain the opinion. The record contains no competent positive medical nexus opinion etiologically linking the Veteran's bilateral knee disability with his active duty service. The Board finds the only competent medical evidence of record is against a finding that the Veteran's bilateral knee disability is etiologically related to his active duty service.

The Veteran has submitted no competent nexus evidence contrary to the VA examiner's opinions. The Veteran has been allowed ample opportunity to furnish medical evidence in support of his claim, but he has not done so. 38 U.S.C.A. 
§ 5107(a) (claimant bears responsibility to support a claim for VA benefits).

In sum, upon careful review and weighing of the evidence, with reasoning as detailed above, the Board finds that the preponderance of the evidence is against the claim for service connection of his bilateral knee disability, and the benefit of the doubt doctrine is not for application. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001). The appeal must therefore be denied.




















ORDER

Prior to December 17, 2015, entitlement to a compensable disability rating for skin rash is denied.

Since December 17, 2015, entitlement to a disability rating in excess of 10 percent for skin rash is denied.

Entitlement to service connection for a right knee disability is denied.

Entitlement to service connection for a left knee disability is denied.




____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs