﻿Citation Nr: AXXXXXXXX
Decision Date: 11/29/19 Archive Date: 11/29/19

DOCKET NO. 190920-34997
DATE: November 29, 2019

ORDER

Entitlement to an initial disability rating in excess of 20 percent for diabetes mellitus, type 2 (DM2), prior to July 8, 2019, is denied.

Entitlement to an initial disability rating in excess of 30 percent for coronary artery disease (CAD) is denied.

FINDINGS OF FACT

1. Prior to July 8, 2019, the Veteran’s DM2 required insulin and a restricted diet, but not a regulation of his activities. 

2. The Veteran did not have more than one episode of acute congestive heart failure during a one-year period, or workload of greater than 3 METS but not greater than 5 METS resulting in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of 30 to 50 percent.

CONCLUSIONS OF LAW

1. Prior to July 8, 2019, the criteria for a disability rating in excess of 20 percent for DM2 were not met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107(b) (2012); 38 C.F.R. § 4.119, Diagnostic Code 7913 (2018).

2. The criteria for a rating in excess of 30 percent for CAD has not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.7, 4.104, Diagnostic Code 7005 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service in the United States Navy from June 1963 to March 1971, including service in the Republic of Vietnam.

These matters are before the Board of Veterans’ Appeals (Board) on appeal from a September 2019 Appeals Modernization Act (AMA) rating decision that considered the evidence of record on that date. The Veteran timely appealed this decision to the Board by requesting the AMA Direct Review lane for a reevaluation of the evidence considered by the Agency of Original Jurisdiction (AOJ).

In the February 2019 AMA decision, the AOJ implicitly found that new and relevant evidence was submitted to warrant re-adjudicating the claim for service connection for a cardiac disorder. Hence, The Board is bound by this favorable finding. See 84 Fed. Reg. 138, 167 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.104(c)).

Increased Disability Ratings

Ratings for service-connected disabilities are determined by comparing the Veteran’s symptoms with criteria listed in VA’s Schedule for Rating Disabilities, which is based, as far as practically can be determined, on average impairment in earning capacity. Separate diagnostic codes identify the various disabilities. 38 C.F.R. § Part 4. When rating a service-connected disability, the entire history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § § 4.7. The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § § 3.159(a)(1). Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § § 3.159(a)(2). The Board may consider many factors when assessing the credibility and weight of lay evidence, including statements made during treatment, self-interest or bias, internal consistency, and consistency with other evidence. Caluza v. Brown, 7 Vet. App. 498, 512 (1995), aff’d, 78 F.3d 604 (Fed. Cir. 1996). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). A layperson is generally not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997); see also Bostain v. West, 11 Vet. App. 124, 127 (1998).

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.

DM2

The Veteran contends that the severity of service-connected DM2 warrants an initial disability rating in excess of 20 percent. More specifically, he advances that his private medical records disclose entitlement to a 40 percent disability rating from as early as June 2010.

The AOJ granted service connection for DM2 in a January 2019 rating decision and assigned an initial disability rating of 20 percent effective from September 12, 2005. The Veteran expressed disagreement with the assigned rating in March 2019 and submitted a supplemental claim for a rating in excess of 20 percent in May 2019. In the September 2019 AMA rating decision on appeal, the AOJ increased this disability rating to 40 percent effective from July 8, 2019. On October 2019, the Veteran disagreed with the assigned date for a 40 percent rating, contending that it should have been assigned and effective in June 2010. 

Under Diagnostic Code 7913, a 20 percent rating is warranted for diabetes mellitus which requires insulin and restricted diet, or; oral hypoglycemic agent and restricted diet. 38 C.F.R. § 4.119, Diagnostic Code 7913. A 40 percent rating is warranted when diabetes mellitus requires insulin, restricted diet, and regulation of activities. A 60 percent rating is warranted for diabetes mellitus when it requires insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately rated. A 100 percent rating is warranted for diabetes mellitus which requires more than one daily injection of insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately rated.

Compensable complications of diabetes are to be rated separately unless they are part of the criteria used to support a 100 percent rating under Diagnostic Code 7913. Id. at Note (1). Noncompensable complications are considered part of the diabetic process under Diagnostic Code 7913. Id.

The Board observes that the criteria for a higher disability rating under this Diagnostic Code are conjunctive not disjunctive; for assignment of a 40 percent disability rating, there must be insulin dependence (or oral hypoglycemia agents), restricted diet, and regulation of activities. See Middleton v. Shinseki, 727 F.3d 1172 (Fed. Cir. 2013) (if disability rating criteria are written in the conjunctive, “a veteran must demonstrate all of the required elements in order to be entitled to that higher evaluation” and 38 C.F.R. § 4.7 cannot be used to circumvent the need to demonstrate all required criteria).

A review of private medical records from the health care network K. P. discloses that the Veteran’s treatment of DM2 was an active problem. Throughout the period under consideration, clinicians indicated that that control of DM2 required twice daily injections of insulin. The Veteran was also directed to self-test his blood sugar level twice daily, using lancets and a monitoring device. These records fail to disclose DM2 treatment protocols of a restrictive diet or physician-directed regulation of activities.

A review of 2019 VA progress notes reveals that the Veteran indicated that he maintains a diabetic diet. However, these notes provide no insight as to whether this maintenance was physician-directed.

On July 8, 2019, the Veteran was afforded a VA examination for diabetes mellitus. A VA medical provider reviewed the claims file; considered the Veteran’s subjective accounts; and conducted a clinical evaluation. This provider indicated that the Veteran’s treatment of DM2 required prescribed oral hypoglycemic agents and insulin injections. The provider also indicated that the medical management of DM2 required regulation of activities. Here, the provider reported that the Veteran’s occasional feeling of hypoglycemia in the evenings before dinner, once or twice a month, necessitated avoidance of heavy or strenuous activities. The Veteran endorsed visits to his diabetic care provide for episodes of ketoacidosis and/or hypoglycemia less than twice a month. Moreover, the Veteran reported that he had not been hospitalized for the past 12 months for either ketoacidosis or hypoglycemic reactions. (As to the noted complications, the Board observes that erectile dysfunction, CAD, and diabetic peripheral neuropathy are service-connected and assigned compensable disability ratings. Whereas renal disease is service-connected at a noncompensable disability rating.) Lastly, concerned function impact on the Veteran’s ability to work, the VA provider indicated the occasional hypoglycemia in the evenings and the Veteran’s “avoidance” avoidance or heavy or strenuous activities.

As discussed above, to receive an initial disability rating in excess of 20 percent prior to July 8, 2019, there would need to be a showing of DM2 control which requires insulin, restricted diet, and regulation of activities. The evidence of record fails to disclose all the criteria. Prior to July 9, 2019, control of DM2 required insulin and a subjectively endorsed “diabetic diet.” This control regimen contemplated by 20 percent, but not higher, rating under 38 C.F.R. § 4.119, Diagnostic Code 7913,

The Veteran contends that his service-connected DM2 warrants a disability rating in excess of 20 percent prior to July 8, 2019. While the Veteran is competent to report his discernable symptoms, as a layperson, he lacks the competence to recommend medical treatment protocols which require highly specialized medical training and knowledge. See Jandreau, Routen, both supra. While the Board finds the Veteran’s accounts of his discernable symptoms to be both competent and credible, it assigns far greater probative weight to the medical evidence.

Considering the above, a preponderance of the evidence is against the claim. The benefit-of-the-doubt rule is not for application and the claim must be denied. 38 U.S.C. § 5107(b); Gilbert, supra.

CAD 

The Veteran contends that the severity of service-connected CAD warrants an initial disability rating in excess of 30 percent, effective October 5, 2009. More specifically, he contends that his disability includes the necessity of implantation of a pacemaker because of ventricular arrhythmia and that the severity of this disability warrants a 100 percent disability rating from October 5, 2009 under 38 C.F.R. § 4.104, Diagnostic Code 7018. Under Diagnostic Code 7018, a 100 percent rating is provided for two months following hospital admission for implantation of cardiac pacemaker. Thereafter, the disability may be rated under Diagnostic Codes 7010, 7011, or 7015. 38 C.F.R. § 4.104 Diagnostic Code 7018.

As a threshold matter, the Board observes that the Veteran first expressed his dissatisfaction with the assignment of a 30 percent disability rating on September 30, 2019. 

The AOJ granted service connection for CAD in the September 2019 rating decision, assigned an initial disability rating of 30 percent effective from October 5, 2009. This award was based on regulations that provide for a presumption of service connection for CAD caused by exposure to herbicide in Vietnam. Although the Veteran claimed that his disease included the need for an implanted pacemaker, cardiac arrhythmia is a separate disorder, not a presumptive disease, and was not included in the award of service connection. Moreover, the initial episode of arrhythmia occurred in March 2010 following an external electric shock and a VA examiner in July 2019 clearly indicated that ventricular arrhythmia and implanted pacemaker are not within the generally accepted medical definition of ischemic heart disease. Notwithstanding some confusing language in the September 2019 rating decision, the Board finds that the RO limited service connection to CAD only and has correctly evaluated this disability according the rating criteria of 38 C.F.R. § 4.104, Diagnostic Code 7005.

Under this assigned Diagnostic Code, a 30 percent disability rating is warranted for a workload of greater than 5 METs, but not greater than 7 METs, resulting in dyspnea, fatigue, angina, dizziness, or syncope, or where there is evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or x-ray. 38 C.F.R. § 4.104, Diagnostic Code 7005.

A 60 percent disability rating is warranted when there is more than one episode of acute congestive heart failure in the past year; a workload of greater than 3 METs, but not greater than 5 METs, resulting in dyspnea, fatigue, angina, dizziness, or syncope; or for left ventricular dysfunction with an ejection fraction of 30 to 50 percent. Id.

And, a 100 percent disability rating is warranted when there is chronic congestive heart failure; a workload of 3 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of less than 30 percent.

In July 2019, the Veteran was afforded a VA heart conditions examination. The examiner reviewed the claims file; considered the Veteran’s subjective representations; and conducted a clinical evaluation. The examiner noted three heart diagnoses: coronary artery disease, diagnosed in 2008; ventricular arrhythmia, diagnosed in 2010; and implanted cardiac pacemaker, diagnosed in 2010. This examiner noted that only CAD is within the generally accepted definition of ischemic heart disease.

The Veteran had not had a myocardial infarction or congestive heart failure. However, as noted above, he had had a cardiac arrhythmia. 

Diagnostic testing disclosed the presence of cardiac hypertrophy—documented in a 2010 echocardiogram. Currently, the left ventricular ejection fraction (LVEF) was 65 percent. While wall motion was normal, wall thickness was abnormal (left ventricular hypertrophy.

Interview METS testing was conducted. Testing yielded a result of >5-7 METs—consistent with activities such as walking one flight of stairs, golfing (without a cart), mowing a lawn (with a push lawnmower); and heavy yard work (akin to digging).

As to functional impact upon the Veteran’s ability to work, the examiner opined that the Veteran’s heart disorder impacts his ability to do heavy or strenuous activities.

As noted above, to receive the next higher disability rating under 38 C.F.R. § 4.104, Diagnostic Code 7005, there would need to be a showing of more than one episode of acute congestive heart failure in the past year; a workload of greater than 3 METs, but not greater than 5 METs, resulting in dyspnea, fatigue, angina, dizziness, or syncope; or for left ventricular dysfunction with an ejection fraction of 30 to 50 percent. Such is not disclosed in the medical evidence of record as noted above.

The Veteran contends that his service-connected CAD with AICD warrants an initial disability rating in excess of 30 percent. While the Veteran is competent to report his discernable symptoms, as a layperson, he lacks the competence to assess the clinical severity of heart disease entities which require highly specialized medical training and knowledge. See Jandreau, Routen, both supra. While the Board finds the Veteran’s accounts of his discernable symptoms to be both competent and credible, it assigns far greater probative weight to the medical evidence.

A preponderance of the evidence is against the claim. The benefit-of-the-doubt rule is not for application and the claim must be denied. 38 U.S.C. § 5107(b); Gilbert, supra.

 

 

J.W. FRANCIS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board B.J. Komins, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.